IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHICAGO & VICINITY LABORERS' DISTRICT COUNCIL PENSION FUND, CHICAGO & VICINITY LABORERS' DISTRICT COUNCIL WELFARE FUND, CHICAGO & VICINITY LABORERS' DISTRICT COUNCIL RETIREE HEALTH AND WELFARE FUND, and CATHERINE WENSKUS, not individually but as Administrator of the Funds, <br><br> Plaintiffs, <br><br> v. <br><br> JOY'S UNION CLEAN UP SERVICES, LLC, an Illinois limited liability corporation, JOY'S CLEANING SERVICES LLC, an Illinois limited liability corporation, and ARMANDO CALDERON, individually, <br><br> Defendants. | Case No.  25-cv-2262 <br><br> Judge: |

## COMPLAINT

Plaintiffs, Chicago & Vicinity Laborers' District Council Pension Fund, Chicago & Vicinity Laborers' District Council Welfare Fund, Chicago & Vicinity Laborers' District Council Retiree Health & Welfare Fund, and Catherine Wenskus, not individually but as Administrator of the Funds, (collectively the "Funds"), by their attorneys Patrick T. Wallace, Amy N. Carollo, G. Ryan Liska, and Sara S. Schumann, and for their Complaint against Joy's Union Clean Up Services, LLC, Joy's Cleaning Services LLC and Armando Calderon, state as follows:

### The Parties

1. The Funds are multiemployer benefit plans within the meanings of Sections 3(3) and 3(37) of ERISA. 29 U.S.C. §1002(3) and 37(A). They are established and maintained

1

pursuant to their respective Agreements and Declarations of Trust in accordance with Section 302(c)(5) of the LMRA. 29 U.S.C. § 186(c)(5). The Funds have offices and conduct business within this District.

2. Plaintiff Catherine Wenskus ("Wenskus") is the Administrator of the Funds, and has been duly authorized by the Funds' Trustees to act on behalf of the Funds in the collection of employer contributions owed to the Funds and to the Construction and General District Council of Chicago and Vicinity Training Fund, and with respect to the collection by the Funds of amounts which have been or are required to be withheld from the wages of employees in payment of Union dues for transmittal to the Construction and General Laborers' District Council of Chicago and Vicinity (the "Union"). With respect to such matters, Wenskus is a fiduciary of the Funds within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. §1002(21)(A).

3. Defendant Joy's Union Clean Up Services, LLC (hereinafter "Joy's Union Clean Up" or the "Company"), is an Illinois limited liability corporation. The Company does business within this District and was, at all times relevant herein, an employer within the meaning of Section 3(5) of ERISA, 29 U.S.C. §1002(5), and Section 301(a) of the LMRA, 29 U.S.C. §185(c). Armando and Sarah Calderon are managing members of Joy's Union Clean Up.

4. Defendant Joy's Cleaning Services LLC (hereinafter "Joy's Cleaning" or referred to collectively with Joy's Union Clean Up and the "Companies") is and was at all times relevant an Illinois limited liability corporation. Armando and Sarah Calderon are managing members of Joy's Cleaning.

5. Defendant Armando Calderon ("Calderon") is and was at all times relevant a managing member of Joy's Union Clean Up and Joy's Cleaning and responsible for the day-to-day operations of the Companies including hiring and firing of employees, the assignment and

2

direction of work, the bidding of jobs, the supervision of work, the setting of wage rates and payment of wages, the reporting of and payment of benefit contributions and employee benefits, and all other terms and conditions of employment.

6. The Union is a labor organization within the meaning of 29 U.S.C. §185(a). The Union, Laborers' Local Union No. 1 and the Company entered into an Independent Construction Industry Collective Bargaining Agreement on March 16, 2017, which binds the Company to all existing and successive area-wide Collective Bargaining Agreements, the most recent of which went into effect on June 1, 2021 ("Agreement"). A copy of the Company's Independent Construction Industry Collective Bargaining Agreement which adopts and incorporates the area-wide negotiated Collective Bargaining Agreements and binds the Company to the Funds' respective Agreements and Declarations of Trust is attached hereto as Exhibit A.

7. The Funds have been duly authorized to serve as collection agents for the Union in that the Funds have been given the authority to collect from signatory contractors union dues which should have been or have been deducted from the wages of covered employees. Further, the Funds have been duly authorized by the Construction and General Laborers' District Council of Chicago and Vicinity Training Fund (the "Training Fund"), the Midwest Construction Industry Advancement Fund ("MCIAF"), the Mid-American Regional Bargaining Association Industry Advancement Fund ("MARBA"), the Chicagoland Construction Safety Council (the "Safety Fund"), the Laborers' Employers' Cooperation and Education Trust ("LECET"), the Concrete Contractors Association ("CCA"), the CDCNI/CAWCC Contractors' Industry Advancement Fund (the "Wall & Ceiling Fund"), the CISCO Uniform Drug/Alcohol Abuse Program ("CISCO"), the Laborers' District Council Labor Management Committee Cooperative ("LDCLMCC"), the Will Grundy Industry Trust Advancement Fund ("WGITA"), the Illinois Environmental Contractors

Association Industry Education Fund ("IECA Fund"), the Illinois Small Pavers Association Fund ("ISPA"), the Lake County Contractors Association Safety Fund ("LCCASE") and the Chicago Area Independent Construction Association ("CAICA" or collectively with all other funds identified in this Paragraph as "Ancillary Funds") to act as an agent in the collection of contributions due to those Funds.

## COUNT I

### (Failure to Pay Benefit Contributions)

For a cause of action against Joy's Union Clean Up Services, LLC:

8. Jurisdiction is based on Sections 502(e)(1) and (2) and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§1132 (e)(1) and (2) and 1145, Section 301(a) of the Labor Management Relations Act ("LMRA") of 1947 as amended, 29 U.S.C. §185(a), 28 U.S.C. §1331, and federal common law.

9. Venue is proper pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. §1132(e)(2), and 28 U.S.C. §1391 (a) and (b).

10. The Agreement and the Funds' respective Agreements and Declarations of Trust obligate the Company to make contributions on behalf of its employees covered by the Agreement for pension benefits, health and welfare benefits, and/or benefits for the training fund and to submit monthly remittance reports in which the Company, *inter alia*, identifies the employees covered under the Agreement and the amount of contributions to be remitted to the Funds on behalf of each covered employee. The Company is obligated to pay between 10% liquidated damages on late-paid contributions, 20% liquidated damages on late-paid, Pension, Welfare, Retiree Welfare and Training Fund contributions, plus interest at a rate of 12%, compounded, from the date the contributions were due until the contributions are paid.

11. The Agreement and the Funds' respective Agreements and Declarations of Trust requires the Company to submit its books and records to the Funds on demand for an audit to determine benefit contribution compliance.

12. The Agreement requires the Company to obtain and maintain a surety bond to guaranty the payment of future wages, pension and welfare benefits.

13. Notwithstanding the obligations imposed by the Agreement and the Funds' respective Agreements and Declarations of Trust, the Company has failed to properly report and pay benefit contributions on behalf of individuals who performed or subcontracted work defined as covered under the terms of the collective bargaining agreement including, but not limited to, post-construction cleanup performed at Glenbard West High School in Glen Ellyn, Illinois and Proviso East High School in Maywood, Illinois.

14. The Company's actions in failing to submit timely payment of benefit contributions violates Section 515 of ERISA, 29 U.S.C. §1145.

15. The Company's actions in failing to timely pay contributions violate Section 515 of ERISA, 29 U.S.C. §1145, and Section 301 of the LMRA. 29 U.S.C. §185 and federal common law interpreting ERISA, 29 U.S.C. §1132 (g)(2).

16. Pursuant to Section 502(g)(2) of ERISA, 29 U.S.C. §1132 (g)(2), Section 301 of the LMRA, 29 U.S.C. §185, federal common law, and the terms of the Agreement and the Funds' respective Trust Agreements, Company is liable to the Funds for delinquent contributions, liquidated damages, interest, audit costs, reasonable attorneys' fees and costs, and such other legal and equitable relief as the Court deems appropriate.

WHEREFORE, Plaintiffs respectfully request this Court enter a judgment in favor of the Plaintiffs and against Joy's Union Clean Up Services, LLC as follows:

      a.      ordering the Company to submit to an audit on demand for the period of March 16, 2017, forward;

      b.      entering judgment in sum certain in favor of the Funds and against Company on the amounts due and owing pursuant to the audit including contributions, interest, liquidated damages and audit costs; and

      c.      awarding Plaintiffs its reasonable attorneys' fees and costs;

      d.      ordering the Company to obtain and maintain an increased surety bond in accordance with the terms of the Agreement and the Funds' respective Agreements and Declarations of Trust; and

      e.      awarding Plaintiffs any further legal and equitable relief as the Court deems appropriate.

## COUNT II

### (Failure To Pay Union Dues)

For a cause of action against Joy's Union Clean Up Services, LLC:

17.      Plaintiffs reallege paragraphs 1 through 16.

18.      Pursuant to agreement, the Funds have been duly designated to serve as collection agents for the Union in that the Funds have been given the authority to collect union dues which should have been or have been deducted from the wages of covered employees.

19.      Dues reports and contributions are due by the 10th day following the month in which the work was performed. Dues reports and contributions which are not submitted in a timely fashion are assessed liquidated damages.

20.      Notwithstanding the obligations imposed by the Agreement, the Company failed to withhold and/or submit payment of dues on behalf of individuals who performed work defined as

covered under the terms of the collective bargaining agreement including, but not limited to, post-construction cleanup performed at Glenbard West High School in Glen Ellyn, Illinois and Proviso East High School in Maywood, Illinois, thereby depriving the Union of information and income.

21. Pursuant to the Agreement, Company owes liquidated damages on all late or unpaid dues plus audit costs, and reasonable attorneys' fees and costs as the Union's collection agent, and such other legal and equitable relief as the Court deems appropriate.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendant Joy's Union Clean Up Services, LLC ordering the Company to submit its books and records to an audit on demand for the period of March 16, 2017 forward, enter judgment on all amounts owed for the period of March 16, 2017 forward together with all liquidated damages, audit costs, and attorneys' fees and costs; and any other legal and equitable relief as the Court deems appropriate.

## COUNT III

### (Single Employer)

For a cause of action against Joy's Union Clean Up Services, LLC and Joy's Cleaning Services LLC:

22. Plaintiffs reallege paragraphs 1 through 16 and Paragraphs 18 through 21 of Count II.

23. Jurisdiction is based on Sections 502(e)(1) and (2) and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§1132 (e)(1) and (2) and 1145, Section 301(a) of the Labor Management Relations Act ("LMRA") of 1947 as amended, 29 U.S.C. §185(a), 28 U.S.C. §1331, federal common law and supplemental jurisdiction under 28 U.S.C. §1367(a).

24. Venue is proper pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. §1132(e)(2), and 28 U.S.C. §1391 (a) and (b).

25. The Agreement and the Funds' respective Agreements and Declarations of Trust obligate the Company to make contributions on behalf of its employees covered by the Agreement for pension benefits, health and welfare benefits, and/or benefits for the training fund and to submit monthly remittance reports in which the Company, *inter alia*, identifies the employees covered under the Agreement and the amount of contributions to be remitted to the Funds on behalf of each covered employee. The Company is obligated to pay between 10% liquidated damages on late-paid contributions, 20% liquidated damages on late-paid, Pension, Welfare, Retiree Welfare and Training Fund contributions, plus interest at a rate of 12% from the date the contributions were due until the contributions are paid.

26. The Agreement and the Funds' respective Agreements and Declarations of Trust requires the Company to submit its books and records to the Funds on demand for an audit to determine benefit contribution compliance.

27. The Agreement requires the Company to obtain and maintain a surety bond to guaranty the payment of future wages, pension and welfare contributions.

28. Joy's Union Clean Up and Joy's Cleaning are identified as separate limited liability corporations with the Illinois Secretary of State.

29. Joy's Union Clean Up and Joy's Cleaning identify Defendant Armando Calderon and his wife, Sarah Calderon, as managing members of both Companies with the Illinois Secretary of State.

30. Despite being identified as separate limited liability corporations with the Illinois Secretary of State, upon information and belief, the Companies maintain a single, joint payroll

account identified as "Joy's Cleaning Services/Joys Union Clean Up" on paystubs issued to employees.

31. Despite being identified as separate limited liability corporations with the Illinois Secretary of State, the Companies file a single, federal corporate tax return assigning 80% of gross revenue to Joy's Cleaning and 20% of gross sales to Joy's Union Clean Up.

32. Joy's Union Clean Up and Joy's Cleaning operate from the same places of business, 112 Day St., Unit 104, Bloomingdale, Illinois 60108 and 27w230 Beecher Ave., Ste 6, Winfield, Illinois 60190.

33. Joy's Union Clean Up and Joy's Cleaning utilized the same assets and equipment at times relevant.

34. Joy's Union Clean Up and Joy's Cleaning utilized the same employees at times relevant.

35. At all times relevant, Defendant Armando Calderon directed and controlled the day-to-day operations of Joy's Union Clean Up and Joy's Cleaning including, but not limited to, hiring, firing, and directing employees, setting wage rates and the conditions of employment, reporting benefit contributions and dues to the Funds and the Union, bidding jobs, and entering into contracts for the Companies.

36. Defendants Joy's Union Clean Up and Joy's Cleaning are single employers in that there exists such a unity of interest and operation that neither company could exist without the other. As a single employer, Joy's Cleaning is bound to the terms of the Agreement between the Union and Joy's Union Clean Up and the Funds' respective Agreements and Declarations of Trust, is obligated to submit its books and records to an audit and is jointly and severally liable for any amounts owed to the Union and the Funds.

WHEREFORE, Plaintiffs respectfully request this Court enter a judgment in favor of the Plaintiffs and against Joy's Union Clean Up Services, LLC and Joy's Cleaning Services LLC as follows:

a. finding the Companies to be a single employer and ordering the Companies to submit to an audit on demand for the period of March 16, 2017, forward;

b. entering judgment in sum certain in favor of the Funds and against Companies on the amounts due and owing pursuant to the audit including contributions, dues, interest, liquidated damages and audit costs; and

c. awarding Plaintiffs its reasonable attorneys' fees and costs;

d. ordering the Companies to obtain and maintain an increased surety bond in accordance with the terms of the Agreement and the Funds' respective Agreements and Declarations of Trust; and

e. awarding Plaintiffs any further legal and equitable relief as the Court deems appropriate.

## COUNT IV

**(Alter Ego)**

For a cause of action against Joy's Union Clean Up Services, LLC and Joy's Cleaning Services LLC in the alternative to Count III:

37. Plaintiffs reallege paragraphs 1 through 16, Paragraphs 18 through 21 of Count II and Paragraphs 23 through 36 of Count III.

38. Jurisdiction is based on Sections 502(e)(1) and (2) and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§1132 (e)(1) and (2) and 1145, Section 301(a) of the Labor Management Relations Act ("LMRA") of 1947 as

amended, 29 U.S.C. §185(a), 28 U.S.C. §1331, federal common law and supplemental jurisdiction under 28 U.S.C. §1367(a) .

39. Venue is proper pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. §1132(e)(2), and 28 U.S.C. §1391 (a) and (b).

40. Joy's Union Clean Up directed individuals allegedly performing janitorial work for Joy's Cleaning to perform post-construction cleaning work defined as covered work under the terms of the Agreement between the Union and Joy's Union Clean Up, including, but not limited to, post-construction cleanup performed at Glenbard West High School in Glen Ellyn, Illinois and Proviso East High School in Maywood, Illinois. The work was performed at the direction of and for the benefit of Joy's Union Clean Up.

41. Joy's Union Clean Up directed and used employees of Joy's Cleaning to perform covered work with the intent of avoiding the existing obligations of Joy's Union Clean Up under the terms of the Agreement and the Funds' respective Agreements and Declarations of Trust including, but not limited to, the obligation to pay the wage rates and submit benefit contributions required under the terms of the Agreement and Funds' respective Agreements and Declarations of Trust.

42. Joy's Union Clean Up obtained an economic benefit from directing and using individuals paid through Joy's Cleaning to perform covered work.

43. Permitting Joy's Union Clean Up to direct and use individuals paid through Joy's Cleaning to perform work defined as covered under the terms of the Agreement and the Funds' respective Agreements and Declarations of Trust would promote a fraud and injustice on the Union and Funds.

44. Joy's Cleaning is an alter ego of Joy's Union Clean Up and, as such, is bound to the terms of the Agreement between the Funds and Joy's Union Clean Up, the terms of the Funds' respective Agreements and Declarations of Trust, is obligated to submit its books and records to an audit and is jointly and severally liable for any amounts owed to the Union and the Funds.

WHEREFORE, Plaintiffs respectfully request this Court enter a judgment in favor of the Plaintiffs and against Joy's Union Clean Up Services, LLC and Joy's Cleaning Services LLC as follows:

    a. finding the Joy's Cleaning to be an alter ego of Joy's Union Clean Up and ordering the Companies to submit to an audit on demand for the period of March 16, 2017 forward;

    b. entering judgment in sum certain in favor of the Funds and against Companies on the amounts due and owing pursuant to the audit including contributions, dues, interest, liquidated damages and audit costs; and

    c. awarding Plaintiffs its reasonable attorneys' fees and costs;

    d. ordering the Companies to obtain and maintain an increased surety bond in accordance with the terms of the Agreement and the Funds' respective Agreements and Declarations of Trust; and

    e. awarding Plaintiffs any further legal and equitable relief as the Court deems appropriate.

## **COUNT V**

### **(Fraud)**

For a cause of action by Plaintiffs Funds and against Defendant Armando Calderon:

45. Plaintiffs reallege paragraphs 1 through 16, Paragraphs 18 through 21 of Count II, Paragraphs 23 through 36 of Count III, and Paragraphs 38 through 44 of Count IV.

46. Jurisdiction is based on Sections 502(e)(1) and (2) and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§1132 (e)(1) and (2) and 1145, Section 301(a) of the Labor Management Relations Act ("LMRA") of 1947 as amended, 29 U.S.C. §185(a), 28 U.S.C. §1331, federal common law and supplemental jurisdiction under 28 U.S.C. §1367(a) .

47. Venue is proper pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. §1132(e)(2), and 28 U.S.C. §1391 (a) and (b).

48. Defendant Calderon is and was at all times relevant a managing member of both Joy's Union Clean Up and Joy's Cleaning and a shareholder of Joy's Union Clean Up.

49. At all times relevant Defendant Calderon was responsible for the day-to-day operations of the Companies including hiring and firing of employee, the assignment and direction of work, the bidding of jobs, the supervision of work, the setting of wage rates and payment of wages, the reporting of and payment of benefit contributions and employee benefits, and all other terms and conditions of employment.

50. Defendant Calderon knowingly and intentionally failed to pay the required wages, benefit contributions and withhold and submit payment of dues for individuals who performed covered work for Joy's Union Clean Up on various projects including, but not limited to, post-construction cleanup performed at Glenbard West High School in Glen Ellyn, Illinois and Proviso East High School in Maywood, Illinois. Calderon knowingly directed employees including, but not limited to, Yireth Saray, Angel Beltran, Kennedy J. Gonzalez Armas and Juan Carlos Garcia Samero to perform covered, post-construction cleaning on jobs for Joy's Union Clean Up and paid them between $17.00 and $19.00 per hour. Defendant Calderon failed to identify these individuals on benefit contributions report and dues reports submitted to the Funds and the Union, direct the

13

Company to pay the appropriate benefit contributions on their behalf, withhold a remit the appropriate dues, and pay the appropriate wages and benefits required under the terms of the Agreement, the Funds' respective Agreement and Declarations of Trust and prevailing wage laws.

51. Signatory contractors are required to submit monthly benefit contribution reports on the tenth day of the month following the month in which covered work was performed identifying the numbers of hours worked by individuals who perform covered work under the terms of the Agreements. Those benefit report forms provide in relevant part:

**EMPLOYER'S WARRANTY AND ACCEPTANCE:** The undersigned employer hereby warrants that this report accurately states all hours worked by all laborers in its employ. In addition, the employer hereby agrees to be bound to the terms of the current collective bargaining agreement executed between the Construction and General Laborers' District Council of Chicago and Vicinity and the relevant Multi Employer Associations. Further, the undersigned hereby expressly accepts and agrees to be bound by the trust agreements governing the Laborers' Pension and Welfare, et al. and accepts all of the terms thereof with the intention of providing benefits to its laborers.

52. The dues report forms also contain a warranty clause which provides:

**EMPLOYER'S WARRANTY AND ACCEPTANCE:** By the submission of this report, Employer expressly warrants and affirms that this report accurately states all hours worked by the Employer's laborer employees. By signing this report, the Employer hereby accepts, adopts and agrees to be bound by the terms and conditions of the Independent Construction Industry Collective Bargaining Agreement with the Construction and General Laborers' District Council of Chicago and Vicinity (the "Union") and any extension, renewal, modification or amendment of that Agreement.

53. Defendant Calderon knowingly signed, submitted and/or directed to be submitted false benefit report forms and false dues report forms failing to identify all individuals who have performed or subcontracted covered work for Joy's Union Clean Up and also submitted inaccurate information to the Fnds by emailing or calling in reports identifying "no covered work" having been performed by Joy's Union Clean Up during the relevant time period.

54. The Funds and the Union relied to their detriment on the false reports, oral and email representations of Joy's Union Clean Up submitted by or at the direction of Defendant

Calderon. Specifically, if the Union had been aware that the Defendants had failed to pay and report the proper wages, dues and benefit contributions for work performed on Joy's Union Clean Up, the Union would have taken all lawful steps permitted under the Agreements including, but not limited to, taking job actions against the Companies, and filing the appropriate lawsuit. If the Funds had been aware that the Defendants had failed to pay and report the proper wages, dues and benefit contributions, the Funds would have been precluded from crediting hours for the incomplete reports submitted by the Defendants and would have commenced the appropriate lawsuit at an earlier date. Thus, by submitting false reports and reporting information, Defendant Calderon enabled the Companies to continue to operate resulting in a benefit to Defendants.

55. The Funds, the Union, and the plan participants of the Funds have suffered harm as a direct result of the false benefit and dues reports and reporting information submitted by or at the direction of Defendant Calderon. Specifically, the Funds and the District Council have incurred unpaid benefit contributions, dues, interest, liquidated damages, and audit costs. The Funds have also provided benefit coverage to individuals based on the submission of the incomplete and false reports. Said coverage would not have been provided had the Funds been aware that the reports were false and incomplete. If the Funds are unable to obtain full recovery of all amounts due from the Defendants, the Funds may become under-funded. The Union has been deprived of information and income as a result of the intentional underreporting.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and against Defendant Armando Calderon for the amounts of unpaid contributions, dues and wages due including all interest, liquidated damages, audit costs, and attorneys' fees and costs owed by Defendants Joy's Union Clean Up Services, LLC and Joy's Cleaning Services LLC as set forth in Counts I through IV, the costs of any additional damages sustained by the Funds and District

Council as a result of the fraudulent misrepresentations including reimbursement of medical and/or pension claims paid out to individuals who obtained eligibility from the false and incomplete reports, plus interest, and any other legal and equitable relief as the Court deems appropriate.

March 4, 2025  Chicago & Vicinity Laborers' District Council Pension and Welfare Funds,

By: /s/ Patrick T. Wallace

Patrick T. Wallace
Laborers' Pension and Welfare Funds
Office of Fund Counsel
11465 W. Cermak Road
Westchester, Illinois 60154



# CONSTRUCTION & GENERAL LABORERS'
## DISTRICT COUNCIL OF CHICAGO AND VICINITY
AFFILIATED WITH THE LABORERS' INTERNATIONAL UNION OF NORTH AMERICA
999 McCLINTOCK DRIVE • SUITE 300 • BURR RIDGE, IL 60527 • PHONE: 630/655-8289 • FAX: 630/655-8853

## INDEPENDENT CONSTRUCTION INDUSTRY COLLECTIVE BARGAINING AGREEMENT

It is hereby stipulated and agreed by and between __Joys Union CleanUP LLC__ ("Employer") and the Construction and General Laborers' District Council of Chicago and Vicinity, Laborers' International Union of North America ("Union"), representing and encompassing its affiliated Local Unions, including Local Nos. 1, 2, 4, 5, 6, 25, 75, 76, 96, 118, 149, 152, 225, 269, 288, 582, 681, 1001, 1035, 1092, together with any other Local Unions that may come within its jurisdiction ("Local Unions"), and encompassing the geographic areas of Cook, Lake, DuPage, Will, Grundy, Kendall, Kane, McHenry and Boone counties, Illinois, that:

1. **Recognition.** In response to the Union's request for recognition as the majority or Section 9(a) representative of the unit employees, the Employer recognizes the Union as the sole and exclusive collective bargaining representative under Section 9(a) of the NLRA, as amended, for the employees now and hereinafter employed under the terms of this Agreement with respect to wages, hours and other terms and conditions of employment. This recognition is based on the Union's having shown, or having offered to show, evidence of its majority support. The Employer has not assigned its rights for purposes of collective bargaining with the Union to any person, entity or association, and hereby revokes its prior assignment of bargaining rights, if any. The Employer further voluntarily elects not to assign such bargaining rights to any person, entity or association without written approval from the Union. Notwithstanding the number of persons employed under this Agreement, the Employer shall abide by this Agreement, and all extensions hereof, and it waives any right it may have to terminate this agreement based upon the number of persons employed.

2. **Labor Contract.** The Employer affirms and adopts the applicable Collective Bargaining Agreement(s), as designated by the Union, between the Union and the Builders Association, the Chicago Area Independent Construction Association, the Chicago Area Rail Contractors Association, the Chicago Area Scaffolding Association, the Chicago Demolition Contractors' Association, the Concrete Contractors Association of Greater Chicago, the Contractors Association of Will and Grundy Counties, the Fox Valley Associated General Contractors, the Midwest Wall and Ceiling Contractors, the Illinois Environmental Contractors Association, the Illinois Road and Transportation Builders Association, the Illinois Small Pavers Association, the Lake County Contractors Association, the Mason Contractors Association of Greater Chicago, the Underground Contractors Association, and all other employer associations with whom the Union or its affiliated Local Unions have an agreement. If the applicable Collective Bargaining Agreement(s) expire during the term of this Agreement, any limitation on the right to strike shall also expire until a successor labor agreement has been established, which shall be incorporated retroactively herein. This Agreement supersedes all contrary terms in the applicable Collective Bargaining Agreement(s).

3. **Total economic increase.** The Employer shall pay its employees a total economic increase of $1.90 per hour effective June 1, 2013; $2.00 per hour effective June 1, 2014; $2.05 per hour effective June 1, 2015; and $2.10 per hour effective June 1, 2016, said amounts to be allocated between wages, fringe benefits and other funds by the Union in its sole discretion. Effective June 1, 2013, the minimum wage rate shall be $37.00 per hour.

4. **Checkoff Deductions and Remittances.** The Employer shall deduct from the wages of employees uniform initiation fees, assessments, membership dues, and working dues in such amounts as the Union shall from time to time establish, and shall remit monthly to the designated Union office the sums so deducted, together with an accurate list showing the employees from whom dues were deducted, the employees' individual hours, gross wages and deducted dues amounts for the monthly period, not later than the tenth (10th) day of the month following the month for which said deductions were made. If the Employer fails to timely remit any amounts to the Union or its affiliated fringe benefit funds that are required under this Agreement, it shall be obligated to the Union for all costs of collection, including attorney fees.

The Employer shall further deduct an amount designated by the Union for each hour that an employee receives wages under the terms of this Agreement on the basis of individually signed voluntary authorized deduction forms and shall pay over the amount so deducted to the Laborers' Political League ("LPL") or to a designated appointee, not later than the 10th day of the month next following the month for which such deductions were made. LPL remittances shall include a report of the hours worked by each Laborer for whom deductions are made. Remittances shall be made by a separate check payable to the Laborers' Political League. The Employer shall be paid a processing fee each month from the total amount to be transmitted to the LPL to be calculated at the Illinois Department of Revenue or other applicable standard.

5. **Work Jurisdiction.** This Agreement covers all work within the applicable Collective Bargaining Agreements and all work within the Union's trade and geographic jurisdiction as set forth in the Union's Statement of Jurisdiction, as amended from time to time, which are incorporated by reference into this Agreement. The Employer shall assign all work described therein to its Union-represented Laborer employees and acknowledges the appropriateness of such assignment. Neither the Employer nor its work assignments as required under this Agreement shall be stipulated or otherwise subject to adjustment by any jurisdictional disputes board or mechanism except upon written notice by and direction of the Union.

6. **Subcontracting.** The Employer, whether acting as a contractor, general manager or developer, shall not contract or subcontract any covered work to be done at the site of construction, alteration, painting or repair of a building, structure or other work to any person, corporation or entity not signatory to and covered by a collective bargaining agreement with the Union. This obligation applies to all tiers of subcontractors performing work at the site of construction. The Employer shall further assume the obligations of all tiers of its subcontractors for prompt payment of employees' wages and other benefits required under this Agreement, including reasonable attorneys' fees incurred in enforcing the provisions hereof.

7. **Fringe Benefits.** The Employer agrees to pay the amounts that it is bound to pay under said Collective Bargaining Agreements to the Health and Welfare Department of The Construction and General Laborers' District Council of Chicago and Vicinity, the Laborers' Pension Fund (including Laborers' Excess Benefit Funds), the Fox Valley Benefit Funds, the Construction and General Laborers' District Council of Chicago and Vicinity Apprentice and Training Trust Fund, the Chicago Area Laborers-Employers Cooperation Education Trust, the LDC/LMCC, and to all other designated Union-affiliated benefit and labor-management funds (the "Funds"), and to become bound by and be considered a party to the agreements and declarations of trust creating the Funds as if it had signed the original copies of the trust instruments and amendments thereto. The Employer further affirms that all prior contributions paid to the Welfare, Pension, Training and other Funds were made by duly authorized agents of the Employer at all proper rates, and evidence the Employer's intent to be bound by the trust agreements and Collective Bargaining Agreements in effect when the contributions were made, acknowledging the report form to be a sufficient instrument in writing to bind the Employer to the applicable collective bargaining agreements.

8. **Contract Enforcement.** All grievances filed by either party arising hereunder shall, at the Union's discretion, be submitted to the Chicago District Council Grievance Committee for final and binding disposition in lieu of another grievance committee, provided that deadlocked grievances shall be submitted to final and binding arbitration upon timely demand. Should the Employer fail to comply within ten (10) days with any binding grievance award, whether by grievance committee or arbitration, it shall be liable for all costs and legal fees incurred by the Union to enforce the award. Notwithstanding anything to the contrary, nothing herein shall limit the Union's right to strike or withdraw its members because of non-payment of wages and/or fringe benefit contributions, failure by the Employer to timely remit dues to the Union, or non-compliance with a binding grievance award. The Employer's violation of any provision of this paragraph will give the Union the right to take any other legal and economic action, including but not limited to all remedies at law or equity. It is expressly understood and agreed that the Union's right to take economic action is in addition to, and not in lieu of, its rights under the grievance procedures. Where necessary to correct contract violations, or where no acceptable steward is currently employed, the Union may appoint and place a steward from outside the workforce at all job sites.

9. **Successors.** In the event of any change in the ownership, management or operation of the Employer's business or substantially all of its assets, by sale or otherwise, it is agreed that as a condition of such sale or transfer that the new owner or manager, whether corporate or individual, shall be fully bound by the terms and conditions of this Agreement. The Employer shall provide no less than ten (10) days' prior written notice to the Union of the sale or transfer and shall be obligated for all expenses incurred by the Union to enforce the terms of this paragraph.

10. **Termination.** This Agreement shall remain in full force and effect from June 1, 2013 (unless dated differently below) through May 31, 2017, and shall continue thereafter unless there has been given written notice, by certified mail by either party hereto, received no less than sixty (60) nor more than ninety (90) days prior to the expiration date, of the desire to modify or amend this Agreement through negotiations. In the absence of such timely and proper notice the Employer and the Union agree to be bound by the new applicable association agreement(s), incorporating them into this Agreement and extending this Agreement for the life of the newly negotiated agreements, and thereafter for the duration of successive agreements, unless and until timely notice of termination is given not less than sixty (60) nor more than ninety (90) days prior to the expiration of each successive Collective Bargaining Agreement.

11. **Execution.** The signatory below warrants his or her receipt of the applicable Collective Bargaining Agreement(s) and authorization from the Employer to execute this Agreement, without fraud or duress, and with full knowledge of the obligations and undertakings contained herein. The parties acknowledge and accept facsimile signatures on this Agreement as if they were the original signatures.

Dated: 3\16\ , 20 17

Jays Union Clean Up LLC
(Employer)

FEIN No: _____

**ACCEPTED:**
Laborers' Local Union No. 1

By: Frank Jamato

CONSTRUCTION AND GENERAL LABORERS'
DISTRICT COUNCIL OF CHICAGO AND VICINITY

By: James P. Connolly, Business Manager

By: Charles LoVerde, Secretary-Treasurer

For Office Use Only: CAJCA*

RECEIVED MAR 20 2017

By: Armando Calderon
(Print Name and Title)
Armando Calderon, Owner

Armando Calderon
(Signature)

125 E Lake Street, Suite 202
(Address)

Bloomingdale, IL 60108
(City, State and Zip Code)

630-930-8026
(Telephone/Telefax)

acalderon858929@gmail.com
(Email Address)

Effective June 1, 2013    WHITE - LOCAL UNION • CANARY - TRUST FUND • PINK - DISTRICT COUNCIL • GOLD - EMPLOYER

**EXHIBIT A**