IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION

| | |
|---|---|
| Chicago & Vicinity Laborers' District Council Pension Fund, et al.<br><br>    Plaintiffs,<br>v.<br><br>Joy's Union Clean Up Services, LLC, et al.<br><br>    Defendants. | Case No. 1:25-cv-2262<br><br>Judge Franklin U. Valderrama<br><br>Honorable Maria Valdez |

**<u>Defendants' Counterclaim Against the Funds
And Third Party Complaint Against the Union</u>**

Defendants, Joy's Union Clean Up Services, LLC, Joy's Cleaning Services LLC, and Armando Calderon, by and through their attorneys, Molho and Associates, LLC and Allocco, Miller & Cahill, P.C., bring the following counterclaims and third party claims.

**<u>The Parties</u>**

1. Chicago & Vicinity Laborers' District Council Pension Fund, Chicago & Vicinity Laborers' District Council Welfare Fund, Chicago & Vicinity Laborers' District Council Retiree Health & Welfare Fund, and Catherine Wenskus, not individually but as Administrator of the Funds, (collectively the "Funds"), are multiemployer benefit plans within the meanings of Sections 3(3) and 3(37) of ERISA. 29 U.S.C. §1002(3) and 37(A). They are established and maintained pursuant to their

1

respective Agreements and Declarations of Trust in accordance with Section 302(c)(5) of the LMRA. 29 U.S.C. § 186(c)(5). The Funds have offices and conduct business within this District.

2. Catherine Wenskus ("Wenskus") is the Administrator of the Funds, and has been duly authorized by the Funds' Trustees to act on behalf of the Funds in the collection of employer contributions owed to the Funds and to the Construction and General District Council of Chicago and Vicinity Training Fund, and with respect to the collection by the Funds of amounts which have been or are required to be withheld from the wages of employees in payment of Union dues for transmittal to the Construction and General Laborers' District Council of Chicago and Vicinity (the "Union"). With respect to such matters, Wenskus is a fiduciary of the Funds within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. §1002(21)(A).

3. The Union is a labor organization within the meaning of 29 U.S.C. §185(a). The Union, Laborers' Local Union No. 1 ("Union") and the Company entered into an Independent Construction Industry Collective Bargaining Agreement on March 16, 2017.

4. Joy's Union Clean Up Services, LLC (hereinafter "Joy's Union Clean Up" or the "Company"), is an Illinois limited liability company. The Company does business within this District and was, at all times relevant herein, an employer within

the meaning of Section 3(5) of ERISA, 29 U.S.C. §1002(5), and Section 301(a) of the LMRA, 29 U.S.C.

5. Joy's Cleaning Services, LLC is a non-union Illinois limited liability company and a named defendant.

6. Armando Calderon is the managing member of Joy's Union Clean Up and an individual who lives in Bloomingdale, IL in DuPage County.

## COUNT I
### Defendant Company's Tortious Interference with Contract
### Power Construction Company, LLC
### Against Plaintiff-Counter Defendants Funds
### and Against Third Party Defendant Union

7. This Court has supplemental jurisdiction over this counterclaim and third-party claim pursuant to 28 U.S.C. §1367(a) because the state law claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution. The state law claims arise from the same common nucleus of operative fact as the federal claims.

8. Venue is proper pursuant 28 U.S.C. §1391 because a substantial part of the events or omissions occurred in this District.

9. On or about January 13, 2025, the Company was party to an existing and valid contract for cleaning services with Power Construction Company, LLC. ("Power").

10. A true and correct copy of the Company's existing and valid contract with Power is attached and incorporated herein at Exhibit 1. The job involved post construction clean up.

11. The value of the contract was $43,000.00 for the cleaning of five (5) floors.

12. Both the Funds and the Union had actual knowledge that the Company had a contractual relationship with Power because upon information and belief, the Funds and the Union have been following and watching the Company's employees and workforce and generally engaging in surveillance of the Company for the past year.

13. Upon information and belief, at approximately the same time that the Funds filed this lawsuit in March 2025, the Funds conspired with the Union to put economic pressure upon all of the Defendants, including the Company.

14. On or about June 19, 2025, while working on the job site at Power, Armando Calderon, overheard a telephone call between the Union President John Conrad, and one of the Company's employees, Gustavo Herrera. The crux of the phone call was John Conrad urging Gustavo Herrera to walk off the Power job because the Company was allegedly "not in good standing."

15. On or about June 20, 2025, Gustavo Herrera quit the Power job, because of the Union instructions, and never returned.

16. Upon information and belief, the Funds and the Union communicated directly with Power and threatened Power that the Funds and/or the Union would lien the Power job if Power continued to work with the Company.

17. Upon information and belief, the Funds and the Union falsely represented to Power that the Company's payments to the Union and the Funds were in arrears or delinquent because they sought to cause Power to stop doing business with the Company – which is exactly what happened. The Funds and the Union acted maliciously toward the Company.

18. On June 23, 2025, Armando Calderon received a phone call from Miguel, Power's Superintendent. Miguel said that Power had been told that the Union said that the Company was not allowed to work on the Power job site unless the Defendants resolved this litigation with the Funds. Miguel recommended that Armando Calderon call Power employee Lance Kennedy. Armando Calderon called Lance Kennedy and Mr. Kennedy said the Company could no longer work on the Power job site.

19. As far as the Company is aware, Power was satisfied with all of the work performed by the Company and Power would not have breached its contract with the Company, had the Funds and the Union not intentionally interfered with the parties' contract.

20. At the time that Funds and the Union actively interfered with the Company's contract with Power, the Company had cleaned three (3) of the five (5) floors associated with the Power contract and were owed $31,000.00. At all times the Company used union employees to complete the three (3) floors.

21. Power has never paid the Company for any of the work performed in connection with the contract.

22. The Company has been damaged by $31,000.00, lost profits, and its attorney's fees and costs, plus punitive damages as a result of the Funds and the Union's malicious interference with their contract.

WHEREFORE, the Company respectfully requests that this Court award the Company $31,000.00 in damages, plus consequential damages, punitive damages in an amount to be determined at trial, costs of suit and any and all other relief that this Court deems appropriate under the circumstances.

## COUNT II
### Defendant Joy's Cleaning Services, LLC Tortious Interference with Contract Against Plaintiff-Counter Defendants Funds and Against Third Party Defendant Union

23. Joy's Cleaning Services, LLC 's incorporates and reallege the allegations in paragraphs 1-8 of this Counterclaim and Third Party Complaint as if restated herein.

24. Joy's Cleaning Services, LLC has been cleaning Painters District Council 14 ("DC 14") offices located in Chicago since July 2022 and DC 14's offices located in

Berkley since September 2021. Joy's Cleaning Services, LLC has been cleaning DC 14's Darrien office since January 2024.

25. Joy's Cleaning Services, LLC average revenue earned for each DC 14 office is as follows:

  a. Berkley – annual revenue of $55,000.00

  b. Chicago – annual revenue of $20,000.00

  c. Darrien – annual revenue of $10,500.00

26. On January 24, 2025, Armando Calderon was approached by Dan Penski, a DC 14 employee. Dan told Armando Calderon that Local 1 Union had contacted him and told him [Dan Penski] not to work with Armando Calderon or Joy's Cleaning Services, LLC because the Defendants knowingly use illegal immigrants as labor. Dan told Armando Calderon that the Union was pressuring DC 14 because the Union did not like the fact that Armando Calderon had two companies with one company using union employees and one company using non-union employees. Dan Penski went on to say that he liked Armando Calderon, so he wanted to give him the courtesy of notice.

27. Moreover, during the meeting between Armando Calderon and Dan Penski, Armando witnessed three grievances from the Union on a Union official's desk alleging various misdeeds by the Defendants, including but not limited to,

7

Armando Calderon's alleged sexual harassment of one of the Company's employees. Jerry Williams saw the grievances as well.

28. Both the Funds and the Union had actual knowledge that Joy's Cleaning Services, LLC had a contractual relationship with DC 14 because upon information and belief, the Funds and the Union have been following and watching Joy's Cleaning Services, LLC employees and workforce and engaging in surveillance of Joy's Cleaning Services, LLC for the past year.

29. Upon information and belief, the Funds and the Union communicated directly with DC 14 and encouraged and cajoled DC 14 to cease working with Joy's Cleaning Services, LLC even though DC 14 employees like Dan Penski liked working with Joy's Cleaning Services, LLC.

30. Upon information and belief, the Funds and the Union falsely represented to DC 14 that the Company's payments to the Union and the Funds were in arrears or delinquent because they sought to cause DC 14 to stop doing business with Joy's Cleaning Services, LLC – which is exactly what happened. The Funds and the Union acted maliciously toward Joy's Cleaning Services, LLC.

31. DC 14 was satisfied with all of the work performed by Joy's Cleaning Services, LLC and DC 14 would not have breached its contract with Joy's Cleaning Services, LLC had the Funds and the Union not intentionally interfered with the parties' contract.

32. Joy's Cleaning Services, LLC has been damaged by an excess of $50,000.00 in lost revenue, lost profits, lost future profits, and their attorney's fees and costs, plus punitive damages as a result of the Funds and the Union's malicious interference with its contract.

WHEREFORE, Joy's Cleaning Services, LLC respectfully requests that this Court award Joy's Cleaning Services, LLC in excess of $50,000.00 in damages, plus consequential damages, future lost profits, and punitive damages in an amount to be determined at trial, costs of suit and any and all other relief that this Court deems appropriate under the circumstances.

## COUNT III
**(Defamation Per Se / Business Disparagement)**
**Against Plaintiff-Counter Defendants Funds and Against Third-Party Defendant, the Union**

33. Defendants incorporate and reallege the allegations in paragraphs 1–32 of this Counterclaim and Third-Party Complaint as if fully restated herein.

34. On or about January 24, 2025, employees and agents of the Union and/or the Funds falsely stated to employees of Painters District Council 14 that Defendants "knowingly use illegal immigrants as labor."

35. On that same date, Union employees and/or agents caused to be circulated and displayed written grievances falsely alleging that Armando Calderon, managing member of Defendants, had engaged in sexual harassment of employees.

36. These statements were false when made and were published to third parties without privilege or justification.

37. The statements imputed to Defendants criminal conduct, specifically Armando Calderon's, dishonesty in their trade or business, and unfitness to carry out their business responsibilities. As such, they constitute defamation per se under Illinois law.

38. The statements were made intentionally and maliciously, with the purpose of harming Defendants' business reputation and inducing Painters District Council 14 to terminate its contractual relationship with Defendants.

39. As a direct and proximate result of the defamatory statements, Defendants suffered harm to their reputation, loss of business, lost profits, and have incurred attorneys' fees and expenses. Punitive damages are warranted given the malicious nature of the statements.

WHEREFORE, Defendants respectfully request that this Court enter judgment in their favor and against Plaintiff-Counter Defendants and the Union on Count III, and award compensatory damages, presumed damages, punitive damages, costs of suit, and such other relief as this Court deems just and proper.

## COUNT IV
### (Tortious Interference with Prospective Economic Advantage)
### Against Plaintiff-Counter Defendants and Against Third-Party Defendant, the Union

40. Defendants incorporate and reallege the allegations in paragraphs 1–39 of this Counterclaim and Third-Party Complaint as if fully restated herein.

41. Defendants had a reasonable expectancy of entering into and continuing valid business relationships with general contractors, labor organizations, and other customers in the Chicago metropolitan area, including but not limited to Power Construction Company and Painters District Council 14.

42. Plaintiff-Counter Defendants and the Union knew about Defendants' existing and prospective business relationships.

43. Plaintiff-Counter Defendants and the Union intentionally and maliciously interfered with Defendants' prospective business relationships by surveilling Defendants' workforce, spreading false statements regarding Defendants' business practices, and threatening customers with liens or labor unrest if they continued to work with Defendants.

44. Plaintiff-Counter Defendants and the Union's conduct was unjustified, undertaken with the intent to harm Defendants and divert business away from them.

45. As a direct and proximate result of this wrongful interference, Defendants lost not only their contracts with Power and DC 14, but also the reasonable expectancy

11

of future business with these and other entities, and have sustained damages including lost revenues, lost profits, loss of goodwill, and attorneys' fees and costs.

WHEREFORE, Defendants respectfully request that this Court enter judgment in their favor and against Plaintiff-Counter Defendants and the Union on Count VI, and award compensatory damages, future lost profits, consequential damages, punitive damages, costs of suit, and such other relief as this Court deems just and proper.

By: */s/Ross I. Molho*

Ross I. Molho
Molho and Associates, LLC
1751 S. Naperville Road, Suite 209
Wheaton, IL  60189
Direct:  630-517-2622
Ross@MolhoLaw.com

Todd A. Miller (tam@alloccomiller.com)
Kathleen M. Cahill (kmc@alloccomiller.com)
Allocco, Miller & Cahill, P.C.
20 N. Wacker Drive, Suite 3517
Chicago, IL 60606
Ph: (312) 675-4325

## Certificate of Service

The undersigned certifies that on March 5, 2026, he caused this Counterclaim and a Third Party Complaint to be served via email and via the Clerk of Court, using the Court's CM/ECF system, notification of which will be sent to all counsel of record, including those counsel below.

Patrick T. Wallace
Laborers' Pension and Welfare Funds
Office of Fund Counsel
11465 W. Cermak Road
Westchester, IL  60154
Patrickw@chilpwf.com
*/s/Ross I. Molho*

12