**IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **Chicago & Vicinity Laborers' District Council Pension Fund, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **Joy's Union Clean Up Services, LLC,** | ) | **Case No. 1:25-cv-2262** |
| **Joy's Cleaning Services, LLC, and** | ) | |
| **Armando Calderon,** | ) | **Judge Franklin U. Valderrama** |
| | ) | |
| **Defendants/Third-Party Plaintiffs,** | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **Laborers' Local Union No. 1,** | ) | |
| | ) | |
| **Third-Party Defendant.** | ) | |

**THIRD-PARTY DEFENDANT UNION'S MEMORANDUM IN SUPPORT OF ITS
MOTION TO DISMISS THIRD-PARTY COMPLAINT**

**INTRODUCTION**

The original plaintiffs are benefits funds who sued the defendants for operating an alter

ego system where the defendants used a non-union company to circumvent the obligation to pay

benefits contributions on all hours that employees worked.  The defendants allege in a combined

counter-claim and third-party complaint that the original plaintiffs and third-party Laborers'

Local Union No. 1 ("Union") spoke to other entities about this, interfering with work

opportunities the defendants had, and also made harmful false statements about defendants.

As set forth below, none of these third-party claims against the Union can survive.

Tortious interference claims are state law claims that overlap with unfair labor practices

1

governed by the National Labor Relations Act ("NLRA"). Where state tort claims overlap with conduct prohibited by the NLRA, the state tort claims must be dismissed and the plaintiff should pursue NLRA rights instead.

Count IV further fails because it fails to plead specific future business relationships that were supposedly interfered with.

The defamation claim in Count III fails as well. In the context of a labor dispute, malice must be pleaded with facts, not just the bare legal standard. Critically, it is not enough to plead: "'we say it didn't happen, so they must have acted maliciously in claiming it did happen.'" There must be facts that the defendant spoke with malice, more than just that bare assertion that the statement was untrue. Defendants have pleaded no such facts and thus their third-party claim for defamation fails.

Since none of the claims in the third-party complaint can survive, the entire third-party complaint against the Union should be dismissed.

## FACTUAL BACKGROUND

This lawsuit originated when the Plaintiffs ("Funds") sued Defendants Joy's Union Clean up Services, LLC ("JUCS"), Joy's Cleaning Services LLC ("JCS") and Armando Calderon (together, "Defendants") who the Funds allege is a managing member of the LLC defendants. The Funds' original complaint was filed March 4, 2025. In short, the Funds sued the Defendants for using JCS as an alter ego to avoid the obligations to the Funds that JUCS agreed to when JUCS signed an Independent Construction Industry Collective Bargaining Agreement with Laborers' Local Union No. 1 ("Union") on March 16, 2017.

Almost exactly a year later, on March 4, 2026, Defendants filed a third-party complaint against the Union and a counterclaim against the Funds. The counter-claim alleges four counts:

I. in Count I, that the Funds and Union tortiously interfered with JUCS's contract with Power Construction Company, LLC ("Power").

II. in Count II, that the Funds and Union tortiously interfered with JCS's contract with Painters District Council 14 ("the Painters");

III. in Count III, that the Union falsely stated that Defendants "knowingly use illegal immigrants as labor" and that Calderon "had engaged in sexual harassment of employees";

IV. in Count IV, that the Funds and Union tortiously interfered with JUCS's future business with Power, the Painters, and other unidentified entities.

## ARGUMENT

Defendants' Counts I, II, and IV, all relate to interference with business relationship, in one sense or another. They all fail because they are preempted by federal law. Count IV further fails because it fails to plead specific future business relationships that were supposedly interfered with.

Defendants' Count III is for defamation. In the context of a labor dispute, actual malice must be pleaded. Here, Defendants do allege that the "statements were made intentionally and maliciously." But that is a bare legal conclusion unsupported by facts that would make it plausible. Thus, it cannot survive motion to dismiss.

## I. Counts I, II, and IV Must Be Dismissed, for One of More of the Following Reasons.

Defendants bring three counts alleging tortious interference. All three must be dismissed because they are, in substance, potential unfair labor practices and subject to federal preemption under *San Diego Bldg. Trades Council v. Garmon ("Garmon"),* 359 U.S. 236 (1959). Count IV

3

should additionally be dismissed because it is stated as tortious interference with prospective economic advantage, but fails to identify specifically any prospective business relations that were allegedly interfered with.

**A.      Counts I, II, and IV Must Be Dismissed Because They Are Preempted by the National Labor Relations Act Under the Doctrine of *Garmon* Preemption.**

In Counts I and II, Defendants alleges that the Union used coercion to interfere with JUCS's contract Power and JCS's contract with the Painters, respectively.  In Count IV, all Defendants allege that the Union used coercion to interfere with unspecified future business, including perhaps with Powers and the Painters.  Tortious interference is a state law cause of action and is preempted in this context by federal law, specifically the National Labor Relations Act ("NLRA"). *San Diego Bldg. Trades Council v. Garmon ("Garmon"),* 359 U.S. 236 (1959). That is because Section 7 of the NLRA protects certain activities, while Section 8 of the NLRA prohibits certain other activities as "unfair labor practices" (herein, "ULP"). *See,* 29 U.S.C. §§ 157-158.

Another judge in this district recently addressed the application of Garmon preemption to Illinois tortious interference claims brought by an employer against a union:

> *Garmon* preemption is motivated by an interest in uniform application and interpretation of federal labor law. If a state-law cause of action purports to regulate activities that are clearly protected by Section 7 of the National Labor Relations Act ("NLRA") or clearly prohibited as an unfair labor practice by Section 8, 'state jurisdiction must yield.' Additionally, when it is not 'clear whether the particular activity regulated by the States [is] governed by § 7 or § 8,…these determinations [must] be left in the first instance to the National Labor Relations Board.' *Id.* at 244-45. That is, '[w]hen an activity is arguably subject to § 7 or § 8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted.' *Id.* at 245.

*Laborers' Pension Fund v. Murphy Paving & Sealcoating, Inc.,* 450 F. Supp. 3d 815, 829 (N.D.Ill. 2020) (Pallmeyer, J.) (citing *Garmon*).

In that case, the employer, Murphy, did exactly what the Defendants are doing here. Faced with a lawsuit from a union's related benefit fund, the employer counterclaimed against the union for tortious interference. *Id.* at 822-23. Specifically, the employer alleged that the union threatened an entity called Black Dog with being "pursued for damages" if Black Dog did business with Murphy. *Id.* Black Dog then declined to do business with Murphy. *Id.*

This Court held that Murphy could not sue the union for tortious interference. "Whether the District Council's [i.e., the union's] conduct was coercive or threatening depends on the facts and circumstances of the communications—a matter uniquely within the purview of the NLRB [i.e., the National Labor Relations Board]." *Id.* at 830. The Court held that, if the union's conduct was coercive, that could be a ULP in violation of the NLRA. *Id.* But because whether conduct constitutes a ULP would need to be determined by the NLRB, *Garmon* preemption applied, preventing this Court from adjudicating a state law tort claim. *Id.*

There is no difference here. If the Union here applied coercive pressure on the Painters and Power, that might be a ULP. But "depend[ing] on the facts and circumstances of the communications," it might also not be. *Id.* at 830. The NLRB, not a court, makes that determination. *Id.* The possibility that the Union's conduct could be a ULP means that JUCS's tort claims based on that conduct are preempted. *Id.*

Garmon preemption applies both to alleged tortious interference with an existing contract and alleged tortious interference with prospective economic advantage, in that both tortious

5

inteference torts require the plaintiff to prove "an intentional interference inducing or causing a breach or termination of the relationship or expectancy," which is in substance the same as the prohibition in Section 8(b)(4) of the NLRA for actions that "threaten, coerce, or restrain any person" in order to force or require that person to "cease doing business with any other person." *Ehredt Underground v. Commonwealth Edison Co.,* 830 F. Supp. 1083, 1095 (N.D.Ill. 1993) (Alesia, J.). Where a plaintiff "must prove the same set of facts to recover under the federal and state claims," then the "issue to be litigated under either claim is the same. Therefore, jurisdiction must first lie with the NLRB." *Id.* at 1096.

Accordingly, all three tortious interference counts are preempted by the NLRA and must be dismissed.

**B.      Count IV Additionally Must Be Dismissed Because it Fails to Plead Any Specific Prospective Business Relationship.**

Count IV further fails because it does not identify any particular business relationships.  It identifies the Painters and Power, but those are addressed in the other counts which should be dismissed for the reasons set forth above.  Beyond that, Count IV only alleges an unspecified expectancy of business with "other entities" (Complaint ¶ 45).  This is insufficient under the pleading standard set forth in *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007), which requires "enough facts to state a claim to relief that is plausible on its face."

Applying this standard to a claim for interference with prospective economic advantage requires identifying a particular prospective business relationship. *Henry v. Fox News Network LLC,* 629 F. Supp. 3d 136, 153 (S.D.N.Y. 2022).  A claim that "does not plead any specific relationships that were injured" cannot proceed and should be dismissed. *Lemelson v. Bloomberg*

*LP,* 253 F. Supp. 3d 333, 341 (D.Mass. 2017), aff'd 903 F.3d 19 (1st Cir. 2018).

This is federal court and the federal pleading standard is set by *Twombly*. Thus, the Union has cited federal cases requiring pleading of a specific prospective economic relationship. Illinois pleading standards are different, but Illinois courts require the same. "Illinois courts have stated that the first element of a prima facie case for tortious interference, that plaintiff had a valid business expectancy, requires allegations of business relationships with *specific third parties.*" *Du Page Aviation Corp. v. Du Page Airport Auth.,* 229 Ill. App. 3d 793, 803 (2nd Dist. 1992) (emphasis in original), appeal denied 146 Ill. 2d 625 (1992). An allegation that "'plaintiffs were continually negotiating and entering into business relationships with others'…is insufficient and by itself" and makes dismissal proper. *Id.* This allegation is substantially the same as Defendants' generic allegation that it would have "future business" with "other entities." (Complaint ¶ 45). Count IV likewise should be dismissed. *Accord, Associated Underwriters of Am. Agency, Inc. v. McCarthy*, 356 Ill. App. 3d 1010, 1020 (1st Dist. 2005) (plaintiff must allege "a business expectancy with a specific third party").

**IV.     Count III Must Be Dismissed Because Defendants Plead Only Conclusory Allegations of Malice Without Any Evidence to Make That Conclusory Allegation Plausible.**

Because this is a labor dispute governed by the NLRA, there is a heightened pleading standard for defamation claims like the one Defendants bring in Count III. In *Linn v. United Plant Guard Workers,* 383 U.S. 53 (1966), the United States Supreme Court "adopted by analogy" the "malice test" from *New York Times Co. v. Sullivan,* 376 U.S. 254 (1964). *Linn,* 383

U.S. at 65. Therefore, a party to a labor dispute may sue for defamation only when the "defamatory statements [were] published with knowledge of their falsity or with reckless disregard of whether they were true or false." *Id.*

Defendants do allege in Count III that the "statements were made intentionally and maliciously." (Complaint ¶ 38.) But in a defamation claim governed by *Linn* where "actual malice" is required, those sorts of simplistic "allegations are conclusory and merit no presumption of truth." *Wg/Welch Mech. Contrs., LLC v. Int'l Ass'n of Sheet Metal, Air, Rail & Transp. Workers*, 2025 U.S. App. LEXIS 14627, *4 (4th Dist. 2025), cert. denied 146 S. Ct. 365 (2025), citing *Ashcroft v. Iqbal,* 556 U.S. 662, 686-87 (2009).

Here, the defamation claim in Count III must fail because the complaint contains no facts to show that the Union acted with malice in accusing Defendants of hiring "illegal immigrants" or that Calderon "engaged in sexual harassment." (Complaint ¶ 35.) Defendants allege that these statements were false. (Complaint ¶ 36.) But, critically, it is not enough for a defamation complaint to allege, "'we say it didn't happen, so they must have acted maliciously in claiming it did happen.'" *Vantassell-Matin v. Nelson,* 741 F. Supp. 698, 706 (N.D.Ill. 1990) (Shadur, J.). It is not enough to plead merely that a statement was untrue. It cannot be inferred from a bare allegation that the statement was untrue that defendants made the statement with actual malice. *Id.* "States of mind may be pleaded generally, but a plaintiff still must point to details sufficient to render a claim plausible." *Pippen v. NBCUniversal Media, LLC,* 734 F.3d 610, 614 (7th Cir. 2013), cert. denied 573 U.S. 917 (2014).

Defendants plead that the statements were untrue; Defendants plead the conclusion that the Union's statements were made with malice; but Defendants failed to plead any facts from

which the conclusory allegation of malice can be plausibly supported.  Thus, Count III must be dismissed. *Vantassell-Matin,* 741 F. Supp. at 706; *Wg/Welch Mech. Contrs., LLC*, 2025 U.S. App. LEXIS 14627, *4.

### CONCLUSION

Counts I, II, and IV are all preempted by federal law because they overlap with conduct that could be an unfair labor practice under the NLRA.  Count IV is inadequately pleaded because it does not name specific business expectancies.  Count III is inadequately pleaded because it does not allege malice beyond stating the bare legal standard.  The entire third-party complaint against the Union should be dismissed.

Robert E. Bloch (ARDC# 6187400)
Josiah A. Groff (ARDC# 6289628)
DOWD, BLOCH, BENNETT, CERVONE,
     AUERBACH & YOKICH, LLP
8 S. Michigan Ave., 19th Floor
Chicago, IL 60603
(312) 372-1361

Respectfully submitted,

/s/ Josiah A. Groff
Josiah A Groff
Attorney for Third-Party Defendant
Laborers' Local Union No. 1

July 6, 2026

9