**IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION**

|  |  |
|---|---|
| Chicago & Vicinity Laborers' District Council Pension Fund, et al. | ) ) ) |
| Plaintiffs, | ) Case No. 1:25-cv-2262 ) |
| v. | ) Judge Franklin U. Valderrama ) |
|  | ) Honorable Maria Valdez |
| Joy's Union Clean Up Services, LLC, et al. | ) |
| Defendants/Third-Party Plaintiffs, | ) ) |
| v. | ) ) |
| Laborers' Local Union No. 1 | ) ) |
| Third-Party Defendant. | ) ) ) |

**Defendants' Response in Opposition
To the Union's Motion to Dismiss**

Defendants, Joy's Union Clean Up Services, LLC, Joy's Cleaning Services LLC

("Joy's"), and Armando Calderon (collectively, the "Company"), by and through their

attorneys, Molho and Associates, LLC oppose the Laborers' Local Union No. 1

("Union") Motion to Dismiss on the following grounds.

**Introduction**

The Union's motion claims that because Defendants' state-law counterclaims

(Counts I, II, and IV) relate to a labor dispute, they are preempted by the exclusive

jurisdiction of the National Labor Relations Act.  That premise is incorrect.

1

*Garmon* preemption is not a blanket rule; it yields where, as here, the conduct at issue consists of knowingly false statements of fact used to destroy a Company's business relationships. As the Supreme Court has explained, "We have refused to apply the pre-emption doctrine to activity that otherwise would fall within the scope of *Garmon* if that activity 'was a merely peripheral concern of the Labor Management Relations Act . . . (or) touched interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, we could not infer that Congress had deprived the States of the power to act.' *Garmon*, at 243-244, 79 S.Ct., at 779. *See, e. g., Linn v. Plant Guard Workers*, 383 U.S. 53, 86 S.Ct. 657 (1966) (malicious libel); *Automobile Workers v. Russell*, 356 U.S. 634, 78 S.Ct. 932 (1958) (mass picketing and threats of violence); *Machinists v. Gonzales*, 356 U.S. 617, 78 S.Ct. 923 (1958) (wrongful expulsion from union membership). *Farmer v. United Bhd. of Carpenters & Joiners of Am., Loc. 25*, 430 U.S. 290, 296–97, 97 S. Ct. 1056, 1061–62, (1977). This Court does not need to consult the parties' collective bargaining agreement to resolve the Company's tortious interference claims.

Similarly, Counts III and IV do not suffer the pleading defects the Union claims. Count IV alleges longstanding customers (Power Construction Company ("Power") and Painters District Council 14 ("DC 14")) that the Union interfered with. These

relationships had a demonstrated multi-year course of dealing, not the generic

"continually negotiating" allegation that doomed the claim in *Du Page Aviation*.[1]

Moreover, Count III alleges facts — not bare conclusions — from which

knowing falsity or reckless disregard can plausibly be inferred, including an account,

from Dan Penski, a DC 14 employee, that the Union's actual motive was competitive

animus over Calderon's ownership of both a union and a non-union company —

directly contradicting the reasons (immigration status and harassment) the Union

gave publicly:

> 26.     On January 24, 2025, Armando Calderon was approached by Dan
> Penski, a DC 14 employee. Dan told Armando Calderon that Local 1
> Union had contacted him and told him [Dan Penski] not to work with
> Armando Calderon or Joy's Cleaning Services, LLC because the
> Defendants knowingly use illegal immigrants as labor. Dan told Armando
> Calderon that the Union was pressuring DC 14 because the Union did not
> like the fact that Armando Calderon had two companies with one
> company using union employees and one company using non-union
> employees. Dan Penski went on to say that he liked Armando Calderon,
> so he wanted to give him the courtesy of notice. (ECF-55, ¶26).

For the reasons below, the Union's Motion to Dismiss should be denied. To the extent

the Court finds any pleading deficiency, Defendants request leave to amend rather than

dismissal with prejudice.

---

[1] "Rather than alleging business relationships with specific third parties, count III alleges in general and conclusory terms that "plaintiffs were continually negotiating and entering into business relationships with others." *Du Page Aviation Corp. v. Du Page Airport Auth.*, 229 Ill. App. 3d 793, 803–04, 594 N.E.2d 1334, 1340 (2nd Dist. 1992).

**Argument**

## I. Standard of Review

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009).

Under *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 245, 79 S.Ct. 773, (1959), States cannot regulate conduct "that the NLRA protects, prohibits, or arguably protects or prohibits." *Wisconsin Dept. of Industry v. Gould Inc.*, 475 U.S. 282, 286, 106 S.Ct. 1057, 89 L.Ed.2d 223 (1986).

Though broad, this standard still has to be met in its entirety. *International Longshoremen's Ass'n, AFL-CIO v. Davis*, 476 U.S. 380, 394, 106 S.Ct. 1904, (1986) ("The precondition for pre-emption, that the conduct be 'arguably' protected or prohibited, is not without substance"). It requires more than "a conclusory assertion" that the NLRA arguably protects or prohibits conduct. *Ibid.* "[A] party asserting pre-emption must advance an interpretation of the [NLRA] that is not plainly contrary to its language and that has not been 'authoritatively rejected' by the courts or the Board." *Id.*, at 395, 106 S.Ct. 1904. The party must then "put forth enough evidence to enable the court to find that the Board reasonably could uphold a claim based on such an interpretation." *Ibid. Glacier Nw., Inc. v. Int'l Bhd. of Teamsters Loc. Union No. 174*, 598 U.S. 771, 776, 143 S. Ct. 1404, 1411, (2023).

## II.     Counts I, II, and IV are Not Preempted.

*Garmon* preemption applies where conduct is "arguably" protected by Section 7 or "arguably" prohibited by Section 8 of the NLRA. *Garmon*, 359 U.S. at 245. The doctrine highlights the NLRB's specialized competence to identify coercive or otherwise ambiguous labor conduct — not garden-variety questions of truth and falsity that courts resolve every day without reference to labor policy at all.

The Union relies heavily on *Laborers' Pension Fund v. Murphy Paving & Sealcoating, Inc.*, 450 F. Supp. 3d 815 (N.D. Ill. 2020), but *Murphy* is distinguishable. There, the Court found that it would be required to determine whether the Union's conduct was coercive and an unfair labor practice under Section 8(b). The Court went on to say, "Whether the District Council's conduct was coercive or threatening depends on the facts and circumstances of the communications—a matter uniquely within the purview of the NLRB." *Laborers' Pension Fund v. Murphy Paving & Sealcoating, Inc.*, 450 F. Supp. 3d 815, 830 (N.D. Ill. 2020).

Here, by contrast, Defendants allege that the Union made affirmatively false statements of fact to induce Power and DC 14 to terminate their relationships with the Company: that the Company's payments to the Union and Funds were "in arrears or delinquent" when they were not (ECF-55, ¶¶ 17, 30); that Defendants "knowingly use illegal immigrants as labor" (ECF-55, ¶¶ 26, 34); and that individual Defendant

5

Armando Calderon had engaged in sexual harassment (ECF-55, ¶¶ 27, 35). Whether these statements were knowingly false is not a question that turns on any characterization of coercive labor conduct — they are ordinary factual questions no different from any other misrepresentation-based interference claim, on which the Board's labor-relations expertise offers no special insight.

Put another way, the Defendants could not bring an unfair labor practice claim before the NLRB related to the Union's defaming of the Defendants and telling the Company's customers that Mr. Calderon sexually harasses his employees and the Company uses employees who are not authorized to work in the US.

### III. Even Where Some Overlap Exists, the Deeply-Rooted-Local-Interest Exception Applies.

*Garmon* preemption "has never been rigidly applied," and the Supreme Court has repeatedly declined to apply it where three conditions are met: (1) the underlying conduct is not conduct Congress intended to protect, so permitting the state claim to proceed creates no risk of displacing federally protected activity; (2) the State has an overriding interest in the subject matter that is "deeply rooted in local feeling and responsibility"; and (3) adjudication of the state claim creates little risk of interfering with the effective administration of national labor policy because the Board's inquiry, if any, would focus on different questions than the state tribunal's. *See, Farmer v. United Bhd. of Carpenters & Joiners of Am., Loc.* 25, 430 U.S. 290, 302, 97 S. Ct. 1056, 1064, (1977)(permitting a state intentional-infliction-of-emotional-distress claim to proceed

notwithstanding overlap with potential unfair labor practice charges); *Linn v. United Plant Guard Workers of Am., Loc. 114*, 383 U.S. 53, 61, 86 S. Ct. 657, 662 (1966) (permitting a state defamation claim to proceed on the same reasoning).

All three factors favor Defendants here. First, the knowing circulation of false statements about a company's finances, immigration compliance, and an individual's personal conduct is not activity the NLRA protects; there is no risk that allowing this claim to proceed will chill or regulate protected concerted activity. Second, Illinois has a substantial and traditional interest — reflected in its tortious interference and defamation case law — in protecting businesses and individuals from having their commercial relationships destroyed through knowing falsehoods. Third, any NLRB proceeding arising from this same conduct would ask only whether the Union's communications with Power and DC 14 were unlawfully coercive under Section 8(b)(4) — a question entirely distinct from whether the specific factual statements made were true, and one that creates no risk of conflicting regulation of the same conduct. *See Linn*, 383 U.S. at 63 ("While the Board might find that an employer or union violated s 8 by deliberately making false statements, or that the issuance of malicious statements during an organizing campaign had such a profound effect on the election as to require that it be set aside, it looks only to the coercive or misleading nature of the statements rather than their defamatory quality. The injury that the statement might cause to an individual's reputation—whether he be an employer or union official—has no relevance

7

to the Board's function. The Board can award no damages, impose no penalty, or give any other relief to the defamed individual").

### IV.     Count IV Adequately Pleads a Business Expectancy.

Count IV is anchored in specifically named entities — Power and DC 14 — with whom Defendants had documented multi-year, recurring commercial relationships. See ECF-55, ¶¶ 9-11 (Power contract, valued at $43,000, for a defined scope of work); ¶¶ 24-25 (JCS's cleaning relationship with DC 14's Chicago, Berkeley, and Darien offices spanning 2021 to 2024, with specific annual revenue figures for each location). Those allegations support a plausible inference that Defendants had a reasonable expectancy not merely of speculative "future business," but of the continuation and renewal of existing, ongoing relationships — precisely the kind of "business relationships with specific third parties" Illinois law requires. *Du Page Aviation*, 229 Ill. App. 3d at 803.

To the extent Count IV's reference to "other entities" (ECF-55, ¶ 45) is read as an independent basis for relief untethered to Power and DC 14, Defendants do not oppose narrowing that count to the named relationships and respectfully request leave to amend to do so if the Court concludes the current language is insufficiently specific.

### V.     Count III Adequately Pleads Malice.

Under *Linn*, a party to a labor dispute may recover for defamation only upon a showing that the defamatory statements were "published with knowledge of their

falsity or with reckless disregard of whether they were true or false." *Linn*, 383 U.S. at 65.

Defendants allege in Count III that when Dan Penski — a DC 14 employee — approached Armando Calderon to warn him that the Union had told DC 14 not to work with him, Penski explained that the Union's actual objection was that Calderon operated both a union company (JUCS) and a non-union company (JCS) — not the immigration-status or harassment allegations the Union was contemporaneously circulating to DC 14 and displaying on grievance forms. ECF-55, ¶ 26. That contemporaneous, first-hand account of the Union's true motive — delivered by the Union's own contact — directly contradicts the reasons the Union gave publicly, supporting a plausible inference that the Union knew the stated reasons were false, or at minimum recklessly disregarded their truth or falsity, when it circulated them. See ECF-55, ¶¶ 27, 34-35 (grievances alleging sexual harassment displayed and circulated without any indication Defendants were ever informed of, or given an opportunity to respond to, the underlying allegations). That is materially more than "we say it didn't happen, so they must have acted maliciously." It is a specific, alleged admission of pretext from a percipient witness. *Cf. Vantassell-Matin v. Nelson*, 741 F. Supp. 698, 706 (N.D. Ill. 1990)

At the pleading stage, that is enough. A plaintiff may plead states of mind generally, so long as the complaint contains sufficient factual matter to render the

allegation plausible. *Pippen v. NBCUniversal Media*, LLC, 734 F.3d 610, 614 (7th Cir. 2013). Paragraph 26 supplies exactly that.

### VI.    If Appropriate, Defendants Should be Given Leave to Amend.

Federal Rule of Civil Procedure 15(a)(2) directs that leave to amend be freely given "when justice so requires." To the extent the Court identifies any deficiency in the third-party complaint, Defendants respectfully request leave to file an amended complaint rather than dismissal with prejudice, particularly given that this case is still at the pleading stage and no party will be prejudiced by amendment.

### Conclusion

For the foregoing reasons, Defendants respectfully request that the Court deny the Union's Motion to Dismiss in its entirety. In the alternative, Defendants request leave to amend to cure any deficiency the Court identifies.

By:    */s/Ross I. Molho*

Ross I. Molho
Molho and Associates, LLC
1751 S. Naperville Road, Suite 209
Wheaton, IL  60189
Direct:  630-517-2622
Ross@MolhoLaw.com

10

## Certificate of Service

The undersigned certifies that on July 28, 2026, he caused this Defendant's Response in Opposition to the Union's Motion to Dismiss to be served via email and via the Clerk of Court, using the Court's CM/ECF system, notification of which will be sent to all counsel of record, including those counsel below.

Patrick T. Wallace
Laborers' Pension and Welfare Funds
Office of Fund Counsel
11465 W. Cermak Road
Westchester, IL  60154
Patrickw@chilpwf.com

Robert E. Bloch
Josiah A. Groff
DOWD, BLOCH, BENNETT, CERVONE
AUERBACH & YOKICH, LLP
8 S. Michigan Ave., 19th Floor
Chicago, IL  60603
rebloch@laboradvocates.com
jgroff@laboradvocates.com

/s/ *Ross I. Molho*

11