**IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION**

|  |  |  |
|---|---|---|
| Chicago & Vicinity Laborers' District Council Pension Fund, et al. | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 1:25-cv-2262 |
| v. | ) ) | Judge Franklin U. Valderrama |
| | ) ) | Honorable Maria Valdez |
| Joy's Union Clean Up Services, LLC, et al. | ) ) | |
| Defendants/Third-Party Plaintiffs, | ) ) | |
| v. | ) ) | |
| Laborers' Local Union No. 1 | ) ) | |
| Third-Party Defendant. | ) ) | |

**Defendants' Response in Opposition
To the Funds' Motion to Dismiss**

Defendants/Counter-Plaintiffs, Joy's Union Clean Up Services, LLC ("Joy's Union Cleaning"), Joy's Cleaning Services LLC ("Joy's Cleaning"), and Armando Calderon ("Calderon," and collectively with Joy's Union Cleaning and Joy's Cleaning, the "Company"), by and through their attorneys, Molho and Associates, LLC, oppose the Motion to Dismiss the Counterclaim (Doc. 80, 81) filed by Plaintiffs/Counter-Defendants Chicago & Vicinity Laborers' District Council Pension Fund, Chicago & Vicinity Laborers' District Council Welfare Fund, the Chicago Laborers District Council Retiree Health and Welfare Fund, and Catherine Wenskus, as Administrator (collectively, the "Funds"), on

1

the following grounds.

### Introduction

The Funds' motion advances two theories: (1) that the Counterclaim fails to allege facts specific to the Funds sufficient to state a claim under Fed. R. Civ. P. 12(b)(6), and (2) that all four counts are preempted by Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, because they supposedly require interpretation of the parties' collective bargaining agreement ("CBA").

As to sufficiency, the Counterclaim does not merely lump the Funds in with Laborers' Local Union No. 1 ("the Union") and hope liability follows. It alleges that the Funds themselves communicated and falsely represented to Power Construction Company ("Power") and Painters District Council 14 ("DC 14") that the Company was delinquent in its contributions (Counterclaim ¶¶ 16–17, 30), and that the Funds agreed with the Union to apply economic pressure on the Company to accomplish that end (Counterclaim ¶ 13). Those are factual allegations of the Funds' own conduct — not the "labels and conclusions" *Iqbal* forbids — and they are corroborated by the one thing only the Funds are positioned to know: whether the Company's contributions were delinquent.

As to preemption, the Funds conflate a claim that merely *references* the CBA with one that requires *interpreting* it. The Supreme Court has squarely rejected that conflation. *Livadas v. Bradshaw*, 512 U.S. 107, 124, 114 S. Ct. 2068, 2078 (1994)("Finally, we were clear

2

that when the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished, see *Lingle*, supra, at 413, n. 12, 108 S.Ct., at 1885, n. 12 ("A collective-bargaining agreement may, of course, contain information such as rate of pay ... that might be helpful in determining the damages to which a worker prevailing in a state-law suit is entitled")).

Whether the Company's benefit contributions were current or delinquent is a factual, accounting-based question — amounts owed compared to amounts paid — not an interpretive dispute over any disputed term of the CBA. And whether Armando Calderon engaged in the harassment described in the grievance the Funds and Union circulated is a question of what happened, not a question about what the CBA's grievance procedure means. Neither inquiry requires the Court to construe the parties' bargaining agreement, and neither is preempted.

**Argument**

### I.    Standard of Review

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009).

Section 301 preempts a state-law claim only where its resolution "requires interpretation of a collective bargaining agreement." *Lingle v. Norge Div. of Magic Chef,*

3

*Inc.*, 486 U.S. 399, 413, 108 S.Ct. 1877 (1988).  In *Lueck* and in *Lingle* the Supreme Court underscored the point that § 301 cannot be read broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of state law, and it stressed that it is the legal character of a claim, as "independent" of rights under the collective-bargaining agreement, *Lueck*, supra, 471 U.S., at 213, 105 S.Ct., at 1912 (and not whether a grievance arising from "precisely the same set of facts" could be pursued, *Lingle*, supra, 486 U.S., at 410, 108 S.Ct., at 1883) that decides whether a state cause of action may go forward. *Livadas v. Bradshaw*, 512 U.S. 107, 123–24, 114 S. Ct. 2068, 2078 (1994).

## II.     The Counterclaim Adequately Alleges the Funds' Own Conduct.

The Funds argue that the Counterclaim's only specific factual allegations concern the Union, and that everything said about the Funds is conclusory. That characterization does not survive a fair reading of Paragraphs 13, 16, 17, and 30.  (ECF -55).

Paragraphs 16, 17, and 30 allege that the Funds *themselves* communicated to Power and DC 14 that the Company was delinquent in its contributions, and that this representation was false. That is a factual allegation with a specific speaker (the Funds), a specific audience (Power and DC 14), and a specific false statement (delinquency). It is not a bare recitation of a tortious-interference element; it identifies exactly what the Funds are alleged to have said and to whom.

Paragraph 13 supplies a further, independent basis for the Funds' liability: it alleges that the Funds *agreed* with the Union to apply economic pressure on the Company.

4

(ECF-55, ¶13). Under Illinois law, civil conspiracy liability does not require that each co-conspirator personally commits every act in furtherance of the scheme; it requires an agreement to accomplish an unlawful purpose, or a lawful purpose by unlawful means, plus a tortious act committed by *any* conspirator in furtherance of that agreement. *Adcock v. Brakegate, Ltd.*, 164 Ill. 2d 54, 64-65 (1994).

Paragraph 13's agreement allegation, combined with the Union's own well-pled overt acts elsewhere in the Counterclaim (the false delinquency, immigration-status, and harassment statements to Power and DC 14), is sufficient at the pleading stage to tie the Funds to that conduct without requiring a separate, word-for-word allegation that the Funds personally uttered each statement.

This is what distinguishes this case from *Laborers' Pension Fund v. Murphy Paving & Sealcoating, Inc.*, 450 F. Supp. 3d 815 (N.D. Ill. 2020) (Pallmeyer, J.), on which the Funds rely. In *Murphy*, the court dismissed the counterclaim against the funds because the pleading contained *no allegation of any agreement or coordination* between the funds and the district council — the funds were simply named as defendants alongside the council with no factual link pled between them. *Id.* at 824–25. Here, by contrast, Paragraph 13 alleges the agreement that *Murphy* found missing. Whether that agreement can ultimately be proven is not a Rule 12(b)(6) question; the Counterclaim need only plead it plausibly, and it does.

III.     **Section 301 Does Not Preempt Counts I, II, III, or IV.**

The Funds argue that because Counts I, II, and IV allege inducement of a breach of a contract governed in part by union-employee staffing, and because Count III's defamation claim touches a grievance filed under the CBA, all four counts require the Court to interpret the CBA and are therefore preempted. That argument proves too much: it would preempt virtually any tort claim that happens to arise between parties to a labor relationship, which is exactly what *Lingle* and *Livadas* forbid.

Start with what element of each claim the Funds say requires interpretation. For the tortious-interference counts (I, II, IV), the disputed element is whether the Funds' and Union's statements that the Company was delinquent were *false*. Determining that requires comparing the Company's actual contribution history against amounts owed under the CBA's schedule — an accounting exercise, not an interpretive one. No party disputes what the CBA requires contractors to pay or when; the dispute is the factual question of whether the Company in fact paid it. Where, as here, "the meaning of contract terms is not the subject of dispute," the state-law claim survives even though the CBA must be consulted to resolve it. *Lingle*, 486 U.S. at 413 n.12; see also *Livadas*, 512 U.S. at 124 (state claim not preempted where it "can be resolved without interpreting the CBA itself").

The same is true of Count III. The Funds argue that resolving whether the harassment grievance was published with knowledge of its falsity or reckless disregard

6

for the truth "centers on adjudication of the Grievance and an interpretation of the CBA."

It does not. Defendants' burden under *Linn v. United Plant Guard Workers of Am., Loc. 114*, 383 U.S. 53, 65 (1966), is to show the statement was false and was published with knowledge of its falsity or reckless disregard of the truth — i.e., whether Armando Calderon in fact engaged in the conduct described, and whether the Funds and Union knew or should have known he had not. That is an ordinary factual and state-of-mind inquiry. It does not require the Court to construe the CBA's grievance procedure or any other term of the CBA; it requires only a factual finding about what happened and what the Funds and Union knew when they said it happened.

*Murphy* concedes that a fact pattern like the one present in this case, is not an argument for preemption, "If the only question were the amount of money that Murphy Paving owed to certain employees, the court perhaps could reference the CBA without interpreting it." *Laborers' Pension Fund v. Murphy Paving & Sealcoating, Inc.*, 450 F. Supp. 3d 815, 827 (N.D. Ill. 2020). Here, Defendants do not ask the Court to determine what the CBA required and then decide whether the Company met it; they ask the Court to determine whether a discrete factual representation — "the Company is delinquent" — was true, using records that either show payment or do not. That is materially different from *Murphy*, and it falls on the non-preempted side of the *Lingle/Livadas* line.

7

**IV.    If Appropriate, Defendants Should Be Given Leave to Amend.**

Federal Rule of Civil Procedure 15(a)(2) directs that leave to amend be freely given "when justice so requires." To the extent the Court identifies any pleading deficiency as to the Funds — for example, if the Court concludes Paragraph 13's conspiracy allegation needs additional factual support — Defendants respectfully request leave to file an amended counterclaim rather than dismissal with prejudice. This case remains at the pleading stage, and no party will be prejudiced by amendment.

## Conclusion

For the foregoing reasons, Defendants/Counter-Plaintiffs respectfully request that the Court deny the Funds' Motion to Dismiss in its entirety. In the alternative, Defendants request leave to amend to cure any deficiency the Court identifies.

By:    */s/Ross I. Molho*

Ross I. Molho
Molho and Associates, LLC
1751 S. Naperville Road, Suite 209
Wheaton, IL  60189
Direct:  630-517-2622
Ross@MolhoLaw.com

8

**<u>Certificate of Service</u>**

The undersigned certifies that on July 28, 2026, he caused this Defendant's Response in Opposition to the Funds' Motion to Dismiss  to be served via email and via the Clerk of Court, using the Court's CM/ECF system, notification of which will be sent to all counsel of record, including those counsel below.

Patrick T. Wallace
Laborers' Pension and Welfare Funds
Office of Fund Counsel
11465 W. Cermak Road
Westchester, IL  60154
Patrickw@chilpwf.com


Robert E. Bloch
Josiah A. Groff
DOWD, BLOCH, BENNETT, CERVONE
AUERBACH & YOKICH, LLP
8 S. Michigan Ave., 19th Floor
Chicago, IL  60603
rebloch@laboradvocates.com
jgroff@laboradvocates.com


*/s/ Ross I. Molho*

9