**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **Chicago & Vicinity Laborers' et al.** **Plaintiffs.** **v.** **Joy's Union Clean Up Services, LLC et al.** **Defendants.** | **Case No. 25-cv-2262** **MAGISTRATE JUDGE VALDEZ** |

**UNION'S REPLY IN SUPPORT OF ITS**
**MOTION TO DISMISS THIRD-PARTY COMPLAINT**

**ARGUMENT**

Defendants' claims are preempted and should be dismissed. Defendants have brought claims that essentially describe violations of Section 8(b)(4)(ii)(B) of the NLRA, i.e., a dispute that the NLRB could adjudicate. As a result, their claims are preempted under *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236 (1959). Defendants' attempts to argue to the contrary do not move the needle.

First, Defendants' tortious interference claims — Counts I, II, and IV — must be dismissed under *Laborers' Pension Fund v. Murphy Paving & Sealcoating, Inc.*, 450 F. Supp. 3d 815 (N.D. Ill. 2020). As Defendants recognize, their claims "relate to a labor dispute." Defs.' Resp in Opp'n to the Union's Mot. to Dismiss (ECF No. 87) at 1. The *Murphy Paving* case unequivocally found preemption in cases where an employer alleges tortious interference through allegedly false statements about delinquent payments. 450 F. Supp. 3d at 824. This, too,

1

is a case where the Defendants allege tortious interference through allegedly "affirmatively false statements" about "delinquent" payments. Defs.' Resp. at 5. Defendants' claims should also be dismissed.

Defendants try to establish their claims on something other than the contract, because the contract means preemption. So they attempt to refocus their arguments away from the delinquent payments and towards alleged conduct by the Union and/or the Funds towards DC 14 and Power. But even this attempt to reorient lands them back at the contract. Having "two companies with one company using union employees and one company using non-union employees," Defs.' Countercl. and Third Party Compl. (ECF 55) at ¶ 26, implicates the contract. There being "three grievances" alleging "sexual harassment" by a Defendant, *id.* at ¶ 27, also implicates the contract. All of Defendants' claims rely on interpretation of the contract and are therefore preempted. *Lingle v. Norge Div. of Magic Chef*, 486 U.S. 399, 412 (1988).

Defendants then attempt to use *Garmon*'s "local feeling" exception to get out from under the weight of *Murphy Paving*'s authority requiring preemption. The "local feeling" exception allows state regulation and state-law suits between an employer and a labor organization when the subject of the suit is one that is so quintessentially local that Congress could not have intended federal labor preemption. *Garmon*, 359 U.S. at 243–44. This typically applies to, for instance, criminal laws encompassing picket-line violence. Doctrine from the Supreme Court to district courts in the Seventh Circuit make it clear that the "local feeling" exception does not apply to the facts in this case. One need look no further than the outcome of *Murphy Paving* to see that claims like Defendants' are preempted.

Second, Defendants *sua sponte* clarified that Count IV should not be read to imply a basis for relief other than Defendants' lost business with DC 14 and Power. But this admission renders

Count IV superfluous, since the alleged damages from Defendants' lost business with DC 14 and Power are covered by Counts I and II. Superfluous claims should be dismissed. *Juza v. Wells Fargo Bank, N.A.*, 794 Fed. App'x 529, 536 (7th Cir. 2020). Thus, Defendants' Count IV should be dismissed.

Third, Defendants' defamation claim — Count III — fails to plead the malice required for defamation by a labor union and must be dismissed. In their Response, Defendants essentially assert that, because the Union and Funds were motivated to make negative statements about the Defendants, they must have known such statements were false. But this is an unsupported logical jump. The motivated disclosure of information reasonably believed to be true is not at all equivalent to knowledge of, or reckless disregard with respect to, that information's falsity. Defendants have no pled a necessary element of defamation are that claim should be dismissed.

Each of the Counts raised by Defendants' Counterclaim and Third Party Complaint should be dismissed. Whether because of preemption or insufficient pleading or Defendants' own admissions, this Court should dismiss all counterclaims third-party claims.

## I. Tortious Interference Counts Must Be Dismissed Under Reasoning From *Murphy Paving*.

Defendants' tortious interference claims — Counts I, II, and IV — must be dismissed under *Murphy Paving*. The case could not be any more on point to the facts at bar. The outcome should thus be the same. Additionally, even when Defendants try to pivot away from the underlying issue of delinquent payments under the CBA by alleging conduct by the Union and/or Funds towards DC 14 and Power, the claims still directly implicate the CBA and require its interpretation. Lastly, Defendant cannot use *Garmon*'s "local feeling" exception as an escape hatch from *Murphy Paving*'s mandate; even the framework that they use, properly applied,

actually argues in favor of preemption. Counts I, II, and IV are therefore preempted and should be dismissed.

### A. The *Murphy Paving* Case Already Expressly Addresses Tortious Interference Through Supposedly False Statements About Delinquent Payments (Count I)

Despite Defendants' protests, *Murphy Paving* applies and requires the preemption and thus dismissal of Count I. Defendants attempt to distinguish *Murphy Paving* on the grounds that, here, Defendants have alleged "affirmatively false statements" — as if that were different from the claims involved in *Murphy Paving*. Defs.' Resp. at 5. On the contrary, this is exactly what the *Muphy Paving* claims were about. Indeed, as the court describes:

> The primary dispute between the parties here concerns whether the District Council's notifications to other employers were justified. Murphy Paving alleges that they were not, and that the District Council *falsely informed* Trice that Murphy Paving had miscoded and underpaid certain employees, and *falsely* told Osman that Murphy Paving was "delinquent."

*Murphy Paving*, 450 F. Supp. 3d at 827 (emphasis added). So, both the Defendants and the *Murphy Paving* court characterize the respective employer's claims as being about false statements.

The similarities continue, however, beyond just how parties characterize allegations. The actual facts alleged by Defendants and by the *Murphy Paving* employer are strikingly similar. The *Murphy Paving* employer alleged that:

> [D]espite [their] alleged compliance with all wage, dues, and benefits terms of the collective-bargaining agreement and the Side Letter, the District Council informed Trice [a third party business partner] in a letter that Murphy Paving had not paid its workers the correct wages and fringe benefits while they were working on projects covered by Trice's contract with Murphy Paving.

*Id.* at 822. These facts are almost identical to the facts that Defendants' claims:

> [T]he Funds and the Union falsely represented to Power that the Company's payments to the Union and the Funds were in arrears or delinquent because they

sought to cause Power to stop doing business with the Company…. Miguel said that Power had been told that the Union said that the Company was not allowed to work on the Power job site unless the Defendants resolved this litigation with the Funds.

Defs.' Countercl. and Third Party Compl. at ¶¶ 17–18.

Because Defendants' claims are indistinguishable from those in *Murphy Paving*, Count I must also be found to be preempted and thus dismissed.


**B.      Likewise as to the Painters and the Unknown Potential Other Customers, the Statements That Joy's Complains about Relate to the Contract (Count II & IV).**

Because Counts II and IV relate to the contract just as much as Count I does, they should likewise be held to be preempted and accordingly also dismissed. In addition to the preempted claim premised centered on delinquent payments, Defendants claim that the Union tortiously interfered with their business relationship with two business partners: DC 14 and Power, because of the Union's belief that Defendants were violating the contract. But because these claims also necessarily implicate the contract, they are preempted and should be dismissed. *Lingle v. Norge Div. of Magic Chef*, 486 U.S. 399, 412 (1988).

First, Defendants allege that the "Union falsely represented to DC 14 that the Company's payments to the Union and the Funds were in arrears or delinquent because they sought to cause DC 14 to stop doing business with Joy's Cleaning Services, LLC." Defs.' Countercl. at ¶ 30. Thus, this claim centers on the contract just like Count I does, because it arises out of the Union's assertion that Defendants were "in arrears or delinquent" on what they owed under the contract. Therefore, this Court should find it to be preempted and subsequently dismiss it.

Next, Defendants allege that the Union interfered with the DC 14 relationship by causing to be displayed three grievances alleging sexual harassment on the part of Mr. Calderon. Defs.'

Countercl. at ¶ 27. Again, regardless of the veracity of the allegations, they directly implicate the contract. Grievances are a creature of collective bargaining agreements. *See, e.g., United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 581 (1960) ("[T]he grievance machinery under a collective bargaining agreement is at the very heart of the system of industrial self-government…. The grievance procedure is, in other words, a part of the continuous collective bargaining process."). Thus, this claim centers on the contract just like Count I does. Therefore, this Court should find it to be preempted and subsequently dismiss it.

Defendants allege that the Union did all of this out of an (according to them) incorrect belief that Defendants' "payments to the Union and the Funds were in arrears or delinquent." Defs.' Countercl. at ¶ 30. Thus, all of the Union's alleged tortious interference in Counts II and IV, regardless of their veracity, are merely a form of dispute over Defendants' contractual obligations. As such, both Counts II and IV, like Count I, center on the contract and so should be found to be preempted and subsequently dismissed.

### C.      Defendants Are Not Saved by *Garmon*'s "Local Feeling" Exception.

Perhaps aware of the foregoing weaknesses in their argument, Defendants additionally raise the argument that their tortious interference claims avoid *Garmon* preemption due to the "local feeling" exception. However, this argument, too, is incorrect. Furthermore, because *Murphy Paving*, after thorough preemption analysis, found nearly identical claims preempted and not saved by the "local feeling exception," this amounts to just another effort by Defendants to bypass precedent which is directly on point.

They assert that their tortious interference claims are "so deeply rooted in local feeling and responsibility" that federal labor preemption does not cover them. Defs.' Resp. at 2 (quoting *Garmon*, 359 U.S at 243–44). However, because the underlying claims are directly related to the

6

CBA and because the Defendants do not allege any violence, or threats of violence, the tortious interference claims do not fall into *Garmon*'s "local feeling" exception. They are thus not saved from dismissal.

Though *Garmon* established extremely broad federal labor preemption, the Supreme Court limited its scope to protect states' police powers to regulate activity like violent conduct.[1] *Garmon* does not preempt cases where the activity in question "touched interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, [courts] could not infer that Congress had deprived the States of the power to Act." *Garmon*, 359 U.S at 243–44.

The Court in *Gould* explained, and subsequent cases have confirmed, that "local feeling and responsibility" implicates states' inherent police powers, such as regulating and punishing actual and threatened violence. *Wis. Dep't of Indus., Labor & Human Relations v. Gould, Inc.*, 475 U.S. 282, 291 (1986) ("[S]ome exercises of the police power address conduct that…implicates 'interests so deeply rooted in local feeling and responsibility' that pre-emption should not be inferred."). Additionally, concurring with the *Garmon* Court, Justice Harlan II explained that "the state police power [is] not displaced by the [NLRA]" and asserted that the state may regulate and punish "violent conduct." *Garmon*, 359 U.S. at 251 (Harlan, J. concurring).

From this perspective, the "local feeling" clause serves almost like a savings clause, protecting states' inherent police powers; it is not an exception that protects employers' tortious interference claims. For instance, the District Court for the District of New Jersey, in a recent challenge to state whistleblower statutes, clearly articulated *Garmon*'s conception to non-

---

[1] The *Garmon* Court also established an exception for conduct that is "a merely peripheral concern of the [NLRA]," *Garmon*, 359 U.S. at 243, which Defendants reference but do not rely upon.

7

preempted police powers: "States' historic police powers" encompass and justify "laws *protecting private property, bodily security, and preservation of the public order*" — that is, the "kinds of laws that maintain and regulate 'domestic peace' and public order." *Davis v. Benihana*, 772 F. Supp. 3d 524, 535 (D.N.J. 2025) (citing *Garmon*, 359 U.S. a 247) (emphasis added).

Thus, the "local feeling" exception is not a get-out-of-preemption-free card that allows any party to assert state tort law claims. Caselaw confirms this reading. The Northern District of Illinois has recognized that "specific examples" of the "local feeling" exception have been found "where the conduct involved acts of physical violence or concerted conduct imminently threateningly violence." *Park Electric Co. v. Int'l Bhd. of Electrical Workers, Local 701*, 540 F. Supp. 779, 782 (N.D. Ill. 1982) (collecting cases). Additionally, the District Court for the Southern District of Indiana recently held an employer's state-law claims of "tortious interference with business relationships and expectancies" did not fall within the "local feeling" exception and were thus *Garmon* preempted. *Integrity Kokosing Pipeline Servs., LLC v. Pipeliners 798 United Ass'n*, Case No. 1:20-cv-2321-RLM-MG, 2021 U.S. Dist. LEXIS 175327 at *30–33 (S. D. Ind. 2021). The court there reasoned that, since the claim alleged no violent conduct or threatened violent conduct, the claim fell outside the states' police powers preserved by *Garmon*. *Id.* at *32–33.

In summary, the long-established caselaw show that *Garmon*'s "local feeling" does not cover the kind of conduct Defendants allege. This case is preempted because it involves a dispute over whether the Defendants were complying with their labor contract, not violence or disturbance of the public order. *Id.* at *33.

8

### 1. Defendants' "Local Feeling" Argument Cannot Avoid the Authority of *Murphy Paving*.

Judge Pallmeyer of the Northern District of Illinois issued her decision in *Murphy Paving* well informed of this doctrine. And, as reviewed above, on facts nearly identical to those at bar, Judge Pallmeyer found preemption. None of Defendants' arguments, including those about the "local feeling" exception, were novel or unknown to Judge Pallmeyer when she wrote *Murphy Paving*. Its authority is undeniable.

Despite this, Defendants insist, generally without any authority, that their state-law claims somehow escape *Murphy Paving* and *Garmon* preemption. The "local feeling" exception argument is just another such attempt. In making this argument, Defendants imply that Judge Pallmeyer was mistaken and that the *Murphy Paving*'s outcome is completely wrong. Thus, not only is Defendants' "local feeling" exception argument wrong when independently evaluated against controlling and persuasive precedent, it requires overturning a recent, directly on-point, and well reasoned case from this District.

### 2. Defendants' Misrepresent *Farmer*, But *Farmer* Points to Preemption Regardless.

Defendants' preferred legal framework on the "local feeling" exception, the *Farmer* three-factor analysis,[2] likewise counsels in favor of finding their claims to be preempted. The three *Farmer* factors are, to paraphrase: (1) whether a state claim posts a risk of displacing federally protected activity, (2) whether the state has an overriding interest in the subject matter,

---

[2] After the Supreme Court's *Allis-Chalmers* decision, *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202 (1985), the *Farmer* test applies only to 'traditional forms' of preemption under the NLRA, i.e., *Garmon* and *Machinists* preemption, but leaves open the question of preemption under Section 301 of the Labor Management Relations Act, 28 U.S.C. § 185. *Douglas v. Am. Information. Technologies Corp.*, 877 F.2d 565, 568 (7th Cir. 1989); *Hyles v. Mensing*, 849 F.2d 1213, 1217 (9th Cir. 1988).

and (3) whether state-law claim adjudication would focus on the same questions as a Board inquiry. *Farmer v. United Bhd. of Carpenters & Joiners of America, Local 25*, 430 U.S. 290, 302 (1977).

But Defendants misrepresent what *Farmer* is. Defendants seem to position *Farmer* as a test for when "the deeply-rooted-local-interest exception applies." Defs.' Resp. at 6 (capitalizations changed). But *Farmer* is not a test for whether *Garmon*'s "local feeling" exception applies; it is a balancing test for whether *Garmon* preemption, *as a whole*, applies. *See Vincent v. Trend Western Technical Corp.*, 828 F.2d 563, 565 (9th Cir. 1987) (citing *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 212 n.6 (1985)). Indeed, as the Court's *Farmer* opinion states, whether an "interest [is] 'deeply rooted in local feeling and responsibility'" is actually subsumed into the test as part of the second factor, the overriding-state-interest factor. *Farmer*, 430 U.S. at 298.

Regardless, even using *Farmer* as Defendants want to, it counsels in favor of preemption. Defendants claim all three factors point away from preemption. They cite no on-point cases in support of this. Rather, drawing from applicable law, the *Farmer* factors, used in the way Defendants seek to use them, actually point towards preemption.

As to the first factor, Defendants' instant case directly risks impinging federally protected activity. Defendants misrepresent what the case is about. What they call "statements about a company's finances," Defs.' Resp. at 7, are in fact disputes among the parties about whether Defendants are complying with a labor contract governed by federal law. What Defendants call "an individual's personal conduct," *id.*, refers to a worker's grievance over sexual misconduct, arising out of that same contract. Defendants' state law claims would displace adjudication of federally-governed labor contract disputes.

10

As to the second factor, Illinois has no overriding interest in the fallout of this labor dispute. Defendants assert that Illinois has a substantial and traditional interest in regulating economic harm resulting from the spread of known falsehoods.[3] *Id.* They cite no authority to support this. In fact, the Northern District of Illinois, when an employer sued for tortious interference with prospective advantage after allegedly being forced into signing a CBA, said that "[t]he state does not have an overriding concern in regulating economic loss caused by labor disputes. Preemption is appropriate in this matter." *Ehred Underground v. Commonwealth Edison Co.*, 830 F. Supp. 1083, 1096 (N.D. Ill. 1993). Illinois has no overriding interest in alleged economic loss caused during a labor dispute.

As to the third factor, the adjudicating state-law claims would involve the same factual inquiries as any potential NLRB proceeding. As discussed above, the factual contentions — CBA compliance, labor and immigration law, and worker grievances — are all directly intertwined with federal labor law. Thus, resolving state-law claims about them would require inquiring into the same facts as any NLRB proceeding on the same subjects.

Thus, Defendants' have raised and relied on the *Farmer* framework to their own detriment. *Farmer* recommends their claims be preempted

Overall, Defendants' claims are not saved from preemption by *Garmon*'s "local feeling" exception. Thus, their claims should be dismissed.

---

[3] Defendants have still not pled facts to support a reasonable inference of known falsehoods spread with malice, the required standard. *Linn v. United Plant Guard Workers*, 383 U.S. 53 (1966).

**II.    Defendants Admit That Count IV Adds Nothing to the Other Counts and Count IV Should Be Dismissed.**

The Court should take Defendants' retreat from Count IV seriously and dismiss it. Defendants opened the section by stating that "Count IV adequately pleads a business expectancy." Defs.; Resp. at 8 (capitalizations changed). Yet, they almost immediately yielded that Count IV's reference to "other entities," should not be read as "an independent basis for relief untethered to Power and DC 14." *Id.* at 9. As testament to their adherence to this position, Defendants *sua sponte* offered to amend their Counterclaim and Third-Party Complaint to reflect that they only mean for Count IV to involve allegations relating to Power and DC 14.

But, because it only involves allegations relating to Power and DC 14, Count IV should be dismissed. When, in the context of other counts, one count is superfluous, it should be dismissed. *Juza v. Wells Fargo Bank, N.A.*, 794 Fed. App'x 529, 536 (7th Cir. 2020). Defendants have explicitly narrowed Count IV to cover only allegations against Power and DC 14, which are covered by other counts. Thus, by focusing only on allegations covered Counts I and II, Count IV has become entirely superfluous and should be dismissed.

**III.    For Defamation, Defendants Have Alleged a Reason for Animus, But Still No Evidence That the Union Knew the Statements to Be False (Count III).**

Defendants have not pled malice. Malice, in the form of knowledge of or reckless disregard with respect to falsity, is a necessary element of defamation against a labor organization. *Linn v. United Plant Guard Workers*, 383 U.S. 53, 65 (1966). Because they have not pled this, Count III should be dismissed.

Defendants attempt to argue to contrary but make a blatant and wholly unsupported logical jump in doing so.

Defendants first allege that the Union and/or the Funds publicly disclosed or caused to be disclosed, Defs.' Resp at 9, to "employees of Painters District Council 14," Defs.' Third Party Compl. at ¶ 34, statements alleging "various misdeeds by the Defendants, including" sexual harassment and knowing, illegal employment of undocumented laborers, *id.* at ¶¶ 27, 34;

Defendants next allege that the Union and/or the Funds were actually "pressuring DC 14 because the Union did not like the fact that Armando Calderon had two companies with one company using union employees and one company using non-union employees," Defs.' Countercl. and Third Party Compl. at ¶ 26;

From these two allegations, Defendants conclude that the Union and/or the Funds made their statements about knowing "use of illegal immigrants as labor" with knowledge of, or reckless disregard with respect to, its falsity, i.e., maliciously, *id.* at ¶ 38.

But this conclusion does not flow from the allegations in their counterclaim. At best, the Defendants' premises could support a reasonable inference that the Union and/or the Funds were *motivated* by their labor dispute to disclose information about Defendants' conduct which the Union and/or the Funds might otherwise not have bothered to publicize. But that is not the same as establishing that the Union and/or the Funds disclosed this information knowing to was false or with reckless disregard to its falsity. Having a motive to disclose unfavorable information is *not* the same as knowing that the unfavorable information is false. But it is the latter that Defendants must plead. *Linn*, 383 U.S. at 65; *Wg/Welch Mech. Contrs., LLC v. Int'l Ass'n of Sheet Metal, Air, Rail & Transp. Workers*, 2025 U.S. App. LEXIS 14627, *4 (4th Dist. 2025), cert. denied 146 S. Ct. 365 (2025); *Vantassell-Matin v. Nelson,* 741 F. Supp. 698, 706 (N.D.Ill. 1990). Accordingly, Defendants' Count III should be dismissed for insufficient pleading, because

the fact that the Union had animus towards Defendants is not evidence that the Union knew what it was saying was untrue.

## CONCLUSION

Defendants have failed to overcome the clear applicability of *Murphy Paving*. Counts I, II, and IV are preempted, and Count IV should also be dismissed as superfluous. Defendants have also failed to plead actual malice in Count III, and it must be dismissed as well.

Respectfully submitted,

/s/ Josiah A. Groff

Robert E. Bloch (#6187400)
Josiah A. Groff (#6289628)
DOWD, BLOCH, BENNETT, CERVONE,
     AUERBACH & YOKICH, LLP
8 S. Michigan Ave., 19th Floor
Chicago, IL 60603
(312) 372-1361
jgroff@laboradvocates.com
efile@laboradvocates.com

August 6, 2026